403 So.2d 1033 (1981)
ADOBE BUILDING CENTERS, INC., Appellant,
v.
L.D. REYNOLDS, Country Club Construction, Inc., et al., Appellees.
No. 78-1469.
District Court of Appeal of Florida, Fourth District.
August 26, 1981.
Rehearing Denied October 16, 1981.
Chad P. Pugatch of Houston, Faircloth, Cooper, Easthope & Kelley, Fort Lauderdale, for appellant.
Gary M. Farmer of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P.A., Hollywood, for appellees.
HERSEY, Judge.
This appeal presents a question which we find to be unique in Florida jurisprudence. The issue is whether one who purchases a product from a retailer or wholesaler and mixes or combines it with another product or substance with the intention of reselling the end product may recover against that seller for property damage under the doctrine of strict liability in tort. We first review the facts.
Appellant, Adobe Building Centers, Inc., is a distributor of construction materials including Portland cement and masonry cement or mortar mix, which, when combined with sand and water, produce stucco. Each of the appellees is involved in the development, construction or sale of residential housing in South Florida. None is in privity with Adobe, but each hired or subcontracted with plasterers to prepare and apply a stucco finish to the homes under construction. The testimony reveals that all the stucco materials were purchased from Adobe. Upon application to the homes, a "pop-out" phenomenon occurred. It was described at trial in this fashion:
[W]hen you look at the stucco exterior of the house, it looked like someone took a machine gun and shot it full of holes. The stucco pops ranged from a dime size to maybe a half a dollar, and the entire exterior of the house was peppered with these little stucco pops.
At the time of trial, one of the appellees, Flag Development Corp., held title to a home with defective stucco. The remaining appellees had extended express warranties to the home buyers and thus were required to remedy the defective stucco.
Appellees brought an action for damages against appellant on several legal theories. Count III of the complaint was based on strict liability and remains the only viable alternative for some appellees.
The trial court entered directed verdicts on the question of liability, in effect finding that under the facts and circumstances of this case strict liability should be imposed.
*1034 As Mr. Justice Holmes said in New York Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921), "a page of history is worth a volume of logic." We find that adage particularly apt here.
The development of strict liability had its origins in cases arising out of personal injury resulting from contact with or proximity to products either defective or dangerous. Initially, one so damaged had nowhere to turn for recompense. Neither breach of warranty nor negligence nor any other existing cause of action could be tailored, without substantial alteration, to fashion a remedy. Strict liability was evolved, piece by piece, to fill this void. Prosser, Torts §§ 96-104 (4th Ed. 1971).
Given this brief rationale for the evolution of the doctrine, we turn our attention to Florida applications of strict liability.
In Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953), a wholesaler of seed was held liable to an ultimate purchaser for selling seed which was not fit for its intended purpose and was of poor quality. There was no privity involved and no personal injury. The court did not specifically refer to the doctrine of strict liability but only a strained analysis avoids the conclusion that it was, indeed, the rationale employed.
Although our own Court, in Keller v. Eagle Army-Navy Department Stores, Inc., 291 So.2d 58 (Fla. 4th DCA 1974) permitted recovery against a seller for personal injuries to one not in privity, strict liability again was not specifically addressed. The issue was further clouded because, while the product there was not determined to be a dangerous instrumentality, it was found to be a "potentially dangerous product."
The foundation thus having been laid by innuendo, the doctrine of strict liability was specifically applied by the supreme court in West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla. 1976). In that case a manufacturer was held liable to an innocent bystander for personal injuries occasioned by a defectively designed product. The contrast between the operative elements of that case and the present one is marked but perhaps not conclusively so. That case involved a manufacturer; this one deals with a seller. That case involved damages for personal injury; in this one the end result was property damage. Lastly, West was an innocent bystander and appellees here are purchasers of an allegedly defective product which is eventually to be resold.
Appellant contends that strict liability ought not be extended beyond West, at least until the supreme court so extends it. In addition to the latter admonition, the argument is basically two-pronged.
First, according to appellant, there is no good reason to encompass a seller within the ambit of strict liability. However, we note that the supreme court, in West, relied heavily on Restatement (Second) of Torts § 402A (1965), which specifically refers to a seller as being subject to strict liability.
Appellant's second argument is that one who buys a product and mixes it with something else and then resells the resulting end product has no standing to invoke the doctrine of strict liability, not being an ultimate consumer or user. The other side of this argument is exemplified by Comment 1 to Restatement (Second) of Torts § 402A (1965) which indicates that the term "consumer" is to be construed broadly so as to include one who prepares the product for consumption:
"Consumers" include not only those who in fact consume the product, but also those who prepare it for consumption... . Consumption includes all ultimate uses for which the product is intended.... "User" includes those who are passively enjoying the benefit of the product ... as well as those who are utilizing it for the purpose of doing work upon it... .
Restating the issue with which we began this analysis and substituting our conclusions for the initial questions, we discern that a retail or wholesale seller may be held strictly liable in tort for damage occasioned to the property of one who purchases the product and prepares it for use by an ultimate consumer. Having determined that appellees fall within this latter category *1035 and there being no question that appellant falls within the former, we hold that the trial court was correct in directing verdicts on the question of liability and in effect applying the doctrine of strict liability in tort to the facts of this case.
AFFIRMED.
MOORE, J., concurs.
HURLEY, J., concurs specially with opinion.
HURLEY, Judge, specially concurring.
As I see it, this appeal presents three separate issues: (1) whether the Restatement (Second) of Torts § 402A, as incorporated into Florida's jurisprudence, extends to property damage in addition to personal injury; (2) whether strict liability in tort, or as it is sometimes called, products liability, may be asserted against retailers and distributors as well as manufacturers; and (3) whether under the facts of this case or as a matter of law, appellee/developers are ultimate users or consumers.
Since question 3 is a threshold issue, I begin there. Appellant argues that appellees are commercial entities within the chain of commerce and, thus, may not qualify as an ultimate user or consumer. I reject this contention. Although appellees are business entities which construct and sell homes for profit, they also caused the stucco materials to be purchased and prepared for their intended use. Thus appellees are, as a matter of fact, "users" and not merely "passers-on" within the chain of commerce. Appellee/developers are at the end of the stream of commerce; it was their property which was damaged and that it was later sold is irrelevant.
In the landmark case of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 701, 377 P.2d 897, 901 (1962), Justice Traynor stated:
The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than the injured persons who are powerless to protect themselves.
This rationale has consistently led courts to impute greater and greater inclusiveness to the terms "ultimate user or consumer." Prosser points out that from the outset "both terms were ... applied in a very broad sense."[1] And indeed, a portion of Comment "1" to Section 402A, which is set forth below, indicates that such was the intent of the draftsmen.
"Consumers" include not only those who in fact consume the product, but also those who prepare it for consumption... . Consumption includes all ultimate uses for which the product is intended.... "User" includes those who are passively enjoying the benefit of the product ... as well as those who are utilizing it for the purpose of doing work upon it... .
The notion that business entities could not be ultimate users or consumers and thus not entitled to sue in strict liability was firmly rejected by the court in Potsdam Welding and Machine Co. Inc. v. Neptune Microfloc, Inc., 57 A.D.2d 993, 394 N.Y.S.2d 744 (3d Dept. 1977). Potsdam, a welding contractor, incurred liability for property damage at a municipal water filtration plant. Apparently its employees were doing welding work when a spark from one of the welding torches fell upon a plastic tube settler, resulting in a fire which caused substantial property damage. Therefore, Potsdam's insurer brought an indemnification action based on strict liability against Neptune, the supplier of the plastic tube settlers. Neptune, in turn, moved to dismiss the strict liability count, claiming that strict liability did not apply where both parties were "industrial/commercial" specialists and only property losses were involved. The trial court denied the motion and the appellate court affirmed. It said, "[w]e find no basis in case law or reasons of policy for defendant's position." Id. at 745. The court elaborated on its decision and said:

*1036 "[U]nder a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury".... It is apparent that in holding the manufacturer liable to "any person" injured "or damaged", the Court of Appeals has made no distinction between ordinary consumers and "commercial/industrial specialists" or between personal injuries and property damage. Id. at 745-746. (Citations omitted.)
The court further held:
Defendant further asserts that "commercial/industrial specialists" in a particular field of trade necessarily have expertise and knowledge in regard to the technology of other fields and should not, therefore, be protected by strict products liability. In our view, however, the complexity and diversity of today's technology places the manufacturer or seller of a particular product in a position little different from the ordinary consumer with respect to sophisticated products unrelated to his own, particularly where he is a remote user or non-user. Special Term properly denied defendant's motion to dismiss plaintiff's fourth cause of action. Id. at 746.
Other examples of a business entity's unrestricted right to sue in strict liability include All-O-Matic Industries, Inc. v. Southern Specialty Paper Co., Inc., 49 A.D.2d 935, 374 N.Y.S.2d 331 (2d Dept. 1975) and Infante v. Montgomery Ward & Co., Inc., 49 A.D.2d 72, 371 N.Y.S.2d 500 (3d Dept. 1975). All-O-Matic is strikingly similar to the case at bar. It involved a business entity which purchased resin-impregnated paper in order to produce swimming pool filters. Due to an alleged defect in the paper, a rare chemical reaction occurred which caused spontaneous combustion and resulted in fire damage to All-O-Matic's plant. Reviewing these facts, the appellate court held that All-O-Matic was entitled to rely on strict liability in its suit against the paper manufacturer. Infante, on the other hand, is slightly different from the case at bar in that it was initiated by a consumer who claimed she was injured when her pajamas caught fire. She instituted suit against the retailer, the manufacturer of the pajamas, and the manufacturer of the fabric. Relevant to our case is the fact that the appellate court expressly allowed the retailer and the manufacturer of the pajamas to cross-claim against the fabric manufacturer for indemnity based on strict liability. It is noteworthy that in each of these cases the primary focus of the court was on the alleged cause of the injury. Where the complainant  be it an individual or business entity  alleged injury from a defectively manufactured or designed product, recourse through strict liability was permitted.
Clearly, the terms "ultimate user or consumer" connote a person or entity at the end of the "stream of commerce" and, to continue the metaphor, I would suggest that case law shows this is a stream which terminates in a delta; it is wider and more inclusive at its mouth than at its narrow beginnings. This concept is in harmony with Prosser's comment that "[a]ny user or consumer of the product, in the broadest sense of the terms, is protected by the strict liability rule."[2] Thus, myriad entities have been allowed to assert claims of strict liability predicated on allegations of property damage or physical injury sustained while engaged in the preparation of the product for its intended use while lawfully enjoying the benefits of the product, while working on or repairing the product, or while enjoying the status of a bystander.[3]
*1037 Even if it is conceded for the sake of argument that appellees were not the ultimate consumers of the stucco materials, certainly, under the foregoing principles of inclusion, they are users in that they prepared and worked on the product for its intended use. Moreover, the facts of the case provide a second and equally compelling justification for appellees' right to proceed on strict liability. Four of the developers gave express warranties to the homebuyers which obligated the developers to repair the defective condition. Though we have been provided with an abbreviated transcript, no one has suggested that the developers were not obligated or did not fulfill their warranty obligations. Therefore, by virtue of these independent contracts, the developers stand in the shoes of the homebuyers and are able to assert any claim available to the homebuyers. As for the fifth developer, Flag Development Corp., unquestionably it is an ultimate user or consumer for it held title to the realty at the time of the commencement of the trial.
Turning to the remaining issues, it is my view that the Florida Supreme Court in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), incorporated the Restatement (Second) of Torts § 402A into our jurisprudence. "We adopt the doctrine of strict liability as stated by the A.L.I. Restatement (Second) of Torts § 402A." Id. at 87. By its very language,[4] Section 402A applies to "physical harm thereby caused to the ultimate user or consumer, or to his property." (Emphasis supplied.) Thus I conclude that Section 402A under Florida law extends to the damage complained of in the case at bar.
While the scope of Section 402A has not been definitively addressed in Florida,[5] the overwhelming weight of authority throughout the country suggests that it should apply to retailers and distributors as well as manufacturers. The rationale for this conclusion was succinctly put by Justice Traynor in the seminal case of Vandermark v. Ford Motor Company, 61 Cal.2d 256, 37 Cal. Rptr. 896, 899, 391 P.2d 168, 171 (1964):
Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.
The weight of authority which has espoused and applied this rationale cannot be denied. Therefore, I concur with the holding that Adobe, as the distributor of an allegedly defective product, is a proper party defendant within the scope of Section 402A.
NOTES
[1] W. Prosser, The Law of Torts 662 (4th ed. 1971).
[2] Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 817 (1966).
[3] Reliance Ins. Co. v. AL E. & C., Ltd., 539 F.2d 1101 (7th Cir.1976) (business entity's insurer permitted to sue on strict liability for property damage incurred while equipment was being transported from railside to construction site); Frazier v. Kysor Industrial Corp., 607 P.2d 1296 (Colo. App. 1979) (strict liability claim by moving company's employee for personal injuries incurred while moving a four ton saw from distributor's warehouse to purchaser's premises); Hamilton v. Motor Coach Industries, Inc., 569 S.W.2d 571 (Tex.Civ.App. 1978) (strict liability claim by expert mechanic for personal injuries incurred while attempting to repair or rebuild a spring loaded air cylinder); Caruth v. Mariani, 11 Ariz. App. 188, 463 P.2d 83 (1970) (action on strict liability allowed for injured bystander).
[4] § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
[5] But see Rice v. Walker, 359 So.2d 891 (Fla. 3d DCA 1978), cert. denied, 367 So.2d 1127 (Fla. 1979) (allowing amendment of complaint which failed to state cause of action in strict liability against retailer because it lacked allegations showing how components were defective); Knipp v. Weinbaum, 351 So.2d 1081 (Fla. 3d DCA 1977), cert. denied, 357 So.2d 188 (Fla. 1978) (allowing amendment of complaint to include cause of action in strict liability against retailer).