520 So.2d 650 (1988)
NORTH MIAMI GENERAL HOSPITAL, INC., Appellant,
v.
Maureen W. GOLDBERG, Appellee.
No. 87-337.
District Court of Appeal of Florida, Third District.
February 23, 1988.
*651 Kubicki, Bradley, Draper, Gallagher & McGrane and Kathryn S. Pecko, Daniels and Hicks and Sam Daniels, Miami, for appellant.
Merritt & Sikes and William C. Merritt, Miami, for appellee.
Before SCHWARTZ, C.J., HENDRY and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
The plaintiff recovered a money judgment against the North Miami General Hospital upon a jury's conclusion that she had sustained an injury caused by a manufacturing defect in a piece of equipment the hospital employed during an operation. We reverse on the ground that no strict liability claim lies against a hospital in these circumstances.
When Ms. Goldberg awoke from a routine operation conducted at North Miami, she had sustained burns at the places on her body where an electro-surgical grounding pad had been used during the surgery. She went to trial against North Miami to recover damages for those injuries.[1] The evidence revealed that the burns could have been caused in but one of two ways: either the surgical nurse had, in preparing the pad, negligently failed to apply protective jelly in the prescribed manner, or an undiscoverable[2] manufacturing defect in the pad had resulted in an excessive electrical charge to the plaintiff's body. The case was submitted to the jury on the issues of (a) the alleged active negligence of the hospital's nurse, and (b) over the defendant's specific objection,[3] strict liability, under which the hospital would be liable if the injury were caused by a defect in the pad. In answer to special interrogatories, the jury found in favor of the hospital on the negligence claim, but that it was liable under the strict liability theory.[4] The trial *652 court entered judgment for the plaintiff in accordance with the latter finding and the hospital appealed.
The underlying basis of the strict liability doctrine, which is expressed in section 402(A) of the Restatement (Second) of Torts (1965) as adopted in Florida by West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), is that those who profit from the sale or distribution of a particular product to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect. The rationale of the doctrine thus inherently requires a defendant which is in a business[5] within the product's distributive chain. See and compare, e.g., Mobley v. South Florida Beverage Corp., 500 So.2d 292 (Fla. 3d DCA 1986) (retailer of defective Pepsi cartons strictly liable), review denied, 509 So.2d 1117 (Fla. 1987), with Johnson v. Supro Corp., 498 So.2d 528 (Fla. 3d DCA 1986) (manufacturer which defectively rebuilds machinery for its own use in producing other product not strictly liable). This model plainly does not fit a health care provider like North Miami General with respect to a piece of equipment it employs in treating its patients. Surely, while Ms. Goldberg was injured by a defect in the pad and is therefore entitled to recover against its manufacturer, it was not transferred or disposed of to her by the hospital. Indeed, the hospital is properly regarded as itself a consumer of the product which merely employs it in performing its actual function of providing medical services. Silverhart v. Mount Zion Hosp., 20 Cal. App.3d 1022, 98 Cal. Rptr. 187 (1971); Magrine v. Krasnica, 94 N.J. Super. 228, 227 A.2d 539 (Hudson County Ct. 1967), aff'd sub nom. Magrine v. Spector, 100 N.J. Super. 223, 241 A.2d 637 (App.Div. 1968), aff'd, 53 N.J. 259, 250 A.2d 129 (1969); see Vergott v. Deseret Pharmaceutical Co., 463 F.2d 12, 16 n. 5 (5th Cir.1972).
In accordance with this approach, it has been widely held that strict liability may not be invoked by a patient against a hospital or physician in the use of a defective medical implement. Hector v. Cedars-Sinai Medical Center, 180 Cal. App.3d 493, 225 Cal. Rptr. 595 (1986) (hospital not strictly liable for defective pacemaker); Silverhart, 20 Cal. App.3d at 1022, 98 Cal. Rptr. at 187 (hospital not strictly liable for defective surgical needle broken in plaintiff during surgery); Magrine, 94 N.J. Super. at 228, 227 A.2d at 539 (dentist not strictly liable for defective needle broken in plaintiff's gum during treatment); Probst v. Albert Einstein Medical Center, 82 A.D.2d 739, 440 N.Y.S.2d 2 (1981) (hospital not strictly liable for defective spinal rod broken after surgical implantation); see also Annot., Application of Rule of Strict Liability in Tort to Person or Entity Rendering Medical Services, 100 A.L.R.3d 1205 (1980). See generally Annot., Liability of Hospital or Medical Practitioner Under Doctrine of Strict Liability in Tort, or Breach of Warranty, for Harm Caused by Drug, Medical Instrument, or Similar Device Used in Treating Patient, 54 A.L.R.3d 258 (1973). As the law is summarized in 2 Am.Prod.Liab.3d § 16:83 (1987):
Hospitals are not ordinarily engaged in the business of selling products or equipment used in the course of their primary function of providing medical services, and strict liability will not be imposed where an injured party alleges that professional services connected with the use of a product, rather than the product itself, were defective, or where the professional services could not have been rendered without using the product.
We agree with and follow these authorities in holding that the trial court erroneously submitted the strict liability issue to the jury.
*653 Since the jury has already found that the hospital was not actively negligent,[6] the result of our holding is to require that, upon remand, judgment be entered in its favor.
Reversed and remanded with directions.
NOTES
[1] The plaintiff also initially joined the manufacturer and the distributor of the grounding pad, but these parties were dismissed because of the plaintiff's inability to effect jurisdiction over them.
[2] There was no evidence that the defect could have been detected by the hospital in the exercise of reasonable care and therefore no claim of negligence in this regard. The sole issue raised as to the hospital's liability with respect to the pad itself was the theory of strict liability.
[3] We have examined the record of the charge conference and conclude, contrary to the plaintiff's appellate position, that the defendant's objection to the submission of the strict liability theory by way of instruction and special jury interrogatory was properly preserved. Fla.R. Civ.P. 1.470(b).

We regard as immaterial the appellee's claim that the issue was not properly stated as a ground of the defendant's motions for directed verdict. See Wagner v. Nottingham Assocs., 464 So.2d 166 (Fla. 3d DCA 1985), pet. for review denied, 475 So.2d 696 (Fla. 1985). This is so because, since the plaintiff was clearly entitled to go to the jury on the active negligence question in any event, the directed verdict motion was not well taken. Such a motion is not in any case the proper means to raise an objection to the submission of only one of multiple theories to the jury. That is the function of an objection to a jury instruction on that subject, which we have held was sufficiently made in this case. Columbia Gas of Kentucky, Inc. v. Maynard, 532 S.W.2d 3, 7 (Ky. 1975); see also Campbell v. Commonwealth, 564 S.W.2d 528, 530 (Ky. 1978). (It may also be noted that even the rule requiring the statement of grounds in support of a directed verdict motion is based upon the thesis that, if those grounds were articulated, the opposing side would then have a fair opportunity to correct or reopen its case to meet them. See Wagner, 464 So.2d at 166; Pinder v. State, 396 So.2d 272 (Fla. 3d DCA 1981). In this instance, nothing the plaintiff could have done in response to the motion for directed verdict could have made any difference. It could not have created a strict liability claim when, as we hold, none exists as a matter of law. Thus, a pure strict liability judgment might well have constituted "fundamental error"  as one based upon no legal liability whatever  which need not have been preserved at all by or in motions for directed verdict. Wagner, 464 So.2d at 171; Pinder, 396 So.2d at 373 n. 3; Marks v. DelCastillo, 386 So.2d 1259 (Fla. 3d DCA 1980), pet. for review denied, 397 So.2d 778 (Fla. 1981).)
[4] WE THE JURY, find the following:

1. Was NORTH MIAMI GENERAL HOSPITAL negligent in its care and treatment of MAUREEN GOLDBERG, and was such negligence a legal cause of loss, injury and damages to MAUREEN GOLDBERG?
 YES ____ NO NO 
2. Was the grounding pad supplied by NORTH MIAMI GENERAL HOSPITAL defective and, if so, was such defect a legal cause of the injury sustained by MAUREEN GOLDBERG?
 YES YES NO ____

[5] These include the manufacturer, West v. Caterpillar Tractor Co., 336 So.2d at 80, distributor, Visnoski v. J.C. Penney Co., 477 So.2d 29 (Fla. 2d DCA 1985), retailer, Perry v. Luby Chevrolet, Inc., 446 So.2d 1150 (Fla. 3d DCA 1984), commercial bailor, Gabbard v. Stephenson's Orchard Inc., 565 S.W.2d 753 (Mo. Ct. App. 1978), and lessor, Futch v. Ryder Truck Rental, Inc., 391 So.2d 808 (Fla. 5th DCA 1980).
[6] The plaintiff claims no error in this determination.