584 A.2d 1383

**William COYLE, a minor, by his parents and natural guardians, William and Marie COYLE, and William and Marie Coyle, in their own right, Appellants,**

v.

**RICHARDSON–MERRELL, INC., and David Rubin and Seymour Margolis, t/a Bonnet Lane Pharmacy, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1989.

Decided Jan. 9, 1991.

Thomas R. Kline, Philadelphia, for appellants.

Frank C. Woodside, III, Joseph E. Conley, Jr., Cincinnati, Ohio, Edward W. Madeira, Jr., Stephen S. Phillips, James M. Beck, Philadelphia, for Rubin & Margolis.

Nina Gussack, Philadelphia, for Richardson–Merrell, Inc.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

William and Marie Coyle brought this action against Richardson–Merrell, Inc., (now Merrell Dow Pharmaceuticals, Inc.) ("Merrell Dow") and David Rubin and Seymour Margolis, pharmacists trading as Bonnet Lane Pharmacy ("Bonnet Lane"), alleging that Bendectin, a prescription drug manufactured by Merrell Dow and supplied to Marie Coyle by Bonnet Lane, caused their son to be born with malformed limbs. Common Pleas Court granted Bonnet Lane's motion for summary judgment and Superior Court affirmed. 372 Pa.Super. 118, 538 A.2d 1379. We granted allocatur to address the question whether a pharmacy should be subject to liability as a supplier in accordance with the principle of strict liability found in Restatement (Second) of Torts § 402A.

Superior Court decided this case by following a prior decision of that court, *Makripodis v. Merrell Dow Pharmaceuticals, Inc.*, 361 Pa.Super. 589, 523 A.2d 374 (1987). In *Makripodis*, the plaintiffs had alleged that a pharmacy "was strictly liable in tort as the retailer of a product which was unreasonably dangerous due to the absence of any warnings as to the teratogenic properties of the drug." 361 Pa.Super. at 591, 523 A.2d at 377. The court affirmed the

grant of summary judgment in favor of the pharmacy. Citing our decisions in *Incollingo v. Ewing*, 444 Pa. 263, 299, 282 A.2d 206 (1971), and *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984), the court stated that "in an action against a drug manufacturer based upon inadequate warnings, the issue to be determined is whether the warning, if any, that was given to the prescribing physicians was proper and adequate." 361 Pa.Super. at 597, 523 A.2d at 378. Observing that it would be incongruous to impose on pharmacists a greater duty to warn patients than is imposed on drug manufacturers, the court held that "a retail pharmacist is not required to provide to the patient-consumer such warnings as are required to be provided to physicians by the manufacturers of prescription drugs." *Id.*

In this appeal, the Coyles argue that *Makripodis* was wrongly decided and should be overruled. In the alternative, they argue that their complaint alleged a basis of strict liability independent of the issue of inadequate warning that is not precluded by the holding or the rationale of *Makripodis*.

According to the appellants, *Makripodis* should be overruled because it represents an unwarranted departure from the law of supplier liability under Restatement (Second) of Torts Section 402A (1965), which has been applied "uniformly and *without exception* " since it was adopted as the law of Pennsylvania in 1966. Brief of Appellants at 10 (emphasis in original). We examine this argument first.

Section 402A provides in relevant part that

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Comment f to § 402A states that it "applies to any manufacturer of such a product, [and] to any wholesale or retail dealer or distributor...." This Court adopted § 402A as the law of the Commonwealth in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). We have also stated its applicability to sellers as well as manufacturers in a number of factual settings, adopting comment f and applying the rule to cases involving suppliers other than sellers as well. *Francioni v. Gibsonia Trucking Company*, 472 Pa. 362, 372 A.2d 736 (1977). The essence of the Coyles' argument is that the rule of strict supplier liability, as set out in the Restatement and as developed in caselaw, admits of no exception for pharmacists, whom they characterize as simply suppliers of prescription drugs.

We begin our analysis by observing that the Coyles' argument rests on a misperception of the nature of the applicable law. Even where this Court has "adopted" a section of the Restatement as the law of Pennsylvania, the language is not to be considered controlling in the manner of a statute. Such precepts, though they may govern large numbers of cases, are nothing other than common law pronouncements by the courts; their validity depends solely on the reasoning that supports them. Where the facts of a case demonstrate that the rule outruns the reason, the court has the power, indeed the obligation, to refuse to apply the rule, a power for the most part unavailable where the rule is legislatively ordained. Were it otherwise, our recognition of the work of the American Law Institute would approach an improper conferral of legislative authority. In short, the court always retains the right and the duty to test the reason behind a common law rule in determining the applicability of such rule to the facts before it. In the face of contrary arguments as to why the rule should not apply in a given case, it is not enough to say merely that the rule as stated contains no exceptions.

Neither is it correct to say that the rule as stated, or as developed in caselaw, contains no exceptions. Comment k

to Section 402A provides an explicit exception that is relevant in the present case. That comment recognizes that [t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their ordinary and intended use. These are especially common in the field of drugs. . . . Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which, for this very reason cannot be legally sold except to physicians, or under the prescription of a physician. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held strictly liable for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

We have also refused to extend the rule to suppliers where to do so would not advance the purpose of the rule. See *Musser v. Vilsmeier Auction Co.*, 522 Pa. 367, 562 A.2d 279 (1989) (auctioneer); *Nath v. National Equipment Leasing Corp.*, 497 Pa. 126, 439 A.2d 633 (1981) (financing lessor).

■ Since 1971, when this Court decided *Incollingo v. Ewing*, it has been clear that when a drug "is available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor." 444 Pa. at 288, 282 A.2d at 220. We formulated this rule with reference to comment k and the policies expressed therein. As Superior Court succinctly stated in *Makripodis,*

it is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking. It is also the duty of the physician to advise

the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug. The warnings which must accompany such drugs are directed to the physician rather than to the patient-consumer as "[i]t is for the prescribing physician to use his independent medical judgment, taking into account the data supplied to him by the manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug."

361 Pa.Super. at 596–97, 523 A.2d at 378, quoting *Leibowitz v. Ortho Pharmaceutical Corporation,* 224 Pa.Super. 418, 431, 307 A.2d 449, 457 (1973).

In arguing that pharmacists have an independent duty to warn of allegedly dangerous characteristics of prescription drugs they dispense, the appellants give scant attention to the rule of *Incollingo* or its rationale. Under that rule, information about the risks of medicines is provided to the person who most needs and can best evaluate it—the physician—to be shared with and explained to the patient in the context of his or her individual medical circumstances. If the manufacturer has no duty to directly warn patients of the risks of drugs, it would indeed be incongruous to hold pharmacists to such a duty in the dispensing of drugs.

Unlike the marketing system for most other products, the distribution system for prescription drugs is highly restricted.[1] Pharmacists, as suppliers, do not freely choose which "products" they will make available to consumers in any given instance, and patients, as consumers, do not freely choose which "product" to buy. Physicians exercising sound medical judgment act as intermediaries in the chain of distribution, preempting, as it were, the exercise of discretion by the supplier-pharmacist, and, within limits, by the patient-consumer. With regard to the communication of

1. We emphasize that this case does not present, and we do not address, the question of pharmacies' liability as suppliers for the sale of "over-the-counter" products or other articles.

warnings, we have recognized this as a real distinction that requires a different rule.

To fully serve its purpose this rule must carry through to the pharmacist as well. Otherwise, the patient-consumer would be receiving information about the risks of medication, information he or she would likely be unable to properly assess and weigh, from someone unfamiliar with the patient's medical condition, *after* those risks had already been weighed by a physician having specific knowledge of the patient's medical needs. While the patient is entitled to know, and a doctor has a duty to inform the patient, of any dangers or side effects associated with a drug recommended for treatment, we see no sound reason for imposing on pharmacists the duty to supply information about the risks of drugs that have already been prescribed. On the contrary, such a rule would have the effect of undermining the physician-patient relationship by engendering fear, doubt, and second-guessing.

The appellants also argue that *Makripodis* does not control their alternative claim, that Bonnet Lane may be subject to strict liability as a supplier of a defective product even if it had no independent duty to warn of alleged risks of Bendectin. It is not clear in what sense the appellants contend that the drug was defective beyond that it allegedly carried a risk, of which no warning was given, of causing the child of the pregnant woman for whom it was prescribed of developing with malformed limbs. It is not alleged that Bendectin was useless for the purpose it was prescribed for, or that it invariably caused the adverse consequences here complained of. It would thus seem that Bendectin is necessarily the type of product covered by comment k of Section 402A, "an apparently useful and desirable product, attended with a known but apparently reasonable risk."[2]

2. We emphasize that the allegation that Bendectin caused the limb malformations, which Merrell Dow denies, is accepted as true only for purposes of deciding the motion for summary judgment.

The Coyles maintain that Comment k does not apply to this case, since the defendants deny that Bendectin is inherently unsafe. This argument misses the point. The Coyles themselves have framed this as a product liability case under Section 402A, alleging that Bendectin is "unavoidably dangerous" (Complaint, ¶ 56) and "inherently unsafe" (Brief at 8). Although the defendants assert that Bendectin does not cause birth defects, the fact remains that it is a prescription drug, a product whose distribution is limited precisely because its benefits and risks are to be assessed only by licensed physicians acting on behalf of particular patients whose individual physical condition and circumstances are known to them.

At a minimum, comment k establishes that the rule of Section 402A is not, as the Coyles' argument implies, one of absolute liability based simply on the fact that a sale occurred, but one of strict liability in which considerations of policy affect the applicability of the rule.

The rationale supporting the rule of strict product liability is set out in comment c to Section 402A.

> the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; [ ] the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; [ ] public policy demands that the burden of accidental injuries caused by products intended for consumption be placed on those who market them, and be treated as a cost of production against which liability insurance can be obtained; and [ ] the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

In *Francioni*, where we determined that the rationale supporting the rule applied equally to lessors and sellers, we isolated four "pertinent factors": (1) supplier liability makes a member of the marketing chain available to the

injured plaintiff for redress; (2) strict liability provides an incentive to safety; (3) a supplier is in a better position to prevent the circulation of defective products; and (4) the supplier can distribute the cost of compensating for injuries resulting from defects by charging for it in his business. 472 Pa. at 368–69, 372 A.2d at 739.

With regard to the pharmacist's role as supplier in prescription drug transactions, we agree with the lower courts that consideration of these factors weighs against application of the rule of Section 402A. As we have previously described, in the restricted distribution system of prescription drugs, it is not the pharmacist on whom the public "is forced to rely" to obtain the products they need. Physicians act as exclusive intermediaries. Nor could holding pharmacists to strict liability serve as an incentive to safety, for the pharmacist presented with a prescription ordered by a duly licensed physician is not at liberty to substitute his judgment of the product's safety for the patient for that of the physician. Similarly, as to preventing the circulation of defective products, it would ill-serve the needs of the public to impose a duty on pharmacists under which, to avoid potential liability, they might refuse to fill prescriptions, notwithstanding decisions by licensed physicians that a particular drug was necessary and appropriate for their patients' medical treatment.

In support of their argument, the appellants can assert no more than the pharmacists' ability to obtain insurance and/or indemnification as a means of distributing the potential cost of liability. Reliance on cost-shifting as the only factor to be considered in whether a given party should be exposed to liability, however, would result in absolute liability rather than strict liability.

For the reasons stated, we decline to extend the rule of strict supplier liability to pharmacists. Accord, *Raynor v. Richardson–Merrell, Inc.,* 643 F.Supp. 238 (D.D.C.1986); *Ramirez v. Richardson–Merrell, Inc.,* 628 F.Supp. 85 (E.D. Pa.1985); *Murphy v. E.R. Squibb & Sons,* 40 Cal.3d 672, 221 Cal.Rptr. 447, 710 P.2d 247 (1985); *Ullman v. Grant,*

114 Misc.2d 220, 450 N.Y.S.2d 955 (1982); *Batiste v. American Home Products Corp.*, 32 N.C.App. 1, 231 S.E.2d 269 (1977); *Bichler v. Willing*, 58 A.D.2d 331, 397 N.Y.S.2d 57 (1977); *McLeod v. W.S. Merrell Co.*, 174 So.2d 736 (Fla. 1965).

The Order of the Superior Court is affirmed.

McDERMOTT, J., did not participate in the consideration or decision of this matter.

PAPADAKOS, J., filed a concurring opinion.

PAPADAKOS, Justice, concurring.

Because I believe that the proper application by this Court of Comment K, Section 402A, Restatement of Torts, to the facts of this case is dispositive of the issue of strict liability of the pharmacists, I concur in the result. I disassociate myself from the balance of the opinion deeming it to be *obiter dictum.*