635 A.2d 151

Albert F. CAFAZZO and Tammy J. Cafazzo, His Wife, Appellants,

v.

CENTRAL MEDICAL HEALTH SERVICES, INC., a corporation; Central Medical Pavillion, Inc., a corporation; and Norman Stern, D.M.D.; Hospital Association of Pennsylvania.

Superior Court of Pennsylvania.

Argued Sept. 2, 1993.

Filed Oct. 27, 1993.

Reargument Denied Jan. 6, 1994.

Robert W. Deer, Pittsburgh, for appellants.

Stella L. Smetanka, Pittsburgh, for Stern, appellee.

Louis C. Long, Pittsburgh, for Cent. Medical, appellee.

Before ROWLEY, President Judge, and WIEAND and CIRILLO, JJ.

CIRILLO, Judge.

This is an appeal from an order entered in the Court of Common Pleas of Allegheny County. We affirm.

The issue presented is whether, as a result of implantation of a defective prosthetic, liability should be extended to a hospital or a doctor based on a theory of product liability under Section 402A of the Restatement (Second) of Torts.

Appellants Albert F. Cafazzo and Tammy J. Cafazzo, husband and wife, initiated this lawsuit against appellees Central Medical Health Services, Inc., Central Medical Pavilion, Inc., [hospital] and Norman Stern, D.M.D., after Dr. Stern implant-

ed into Mr. Cafazzo's jaw a prosthetic device known as the Vitek Proplast TMJ prosthesis. In their complaint, Mr. and Mr. Cafazzo alleged that the hospital and Dr. Stern "provided, sold or otherwise placed into the stream of commerce products manufactured by Vitek, Inc., known as Proplast TMJ implants." Mr. Cafazzo alleged that the product was defectively designed, not safe for its intended use, and lacked any warnings necessary to make it safe for its intended use. Mr. Cafazzo further alleged that as a result of the implant he suffered the following injuries: erosion of the mandibular condyle; fragmentation of dense fibrous connective tissue; chronic inflammation; generation of numerous foreign body type giant cells containing polarizing particles; infection; and pain, stress and anxiety. As a result of these medical conditions, Mr. Cafazzo averred that he was required to undergo additional surgery for removal of the implant and reconstruction of his jaw. In addition to the product liability action, Mrs. Cafazzo alleged a claim for loss of consortium.

The hospital and Dr. Stern filed preliminary objections in the nature of a demurrer. Following argument before the Honorable Eugene Strassburger, the trial court issued an order granting both the hospital's and Dr. Stern's preliminary objections and dismissing the Cafazzos' complaint. This appeal followed.[1]

Mr. and Mrs. Cafazzo raise the following issue: whether a physician or hospital who regularly provides, sells and charges for prosthetic implants can be liable under Restatement of Torts (Second) § 402A for selling a defective product when the implant is defective and causes damage to a patient?

---

1. An amicus curiae brief has been filed by the Hospital Association of Pennsylvania (HAP) in support of the position that liability under Section 402(A) should not be extended to hospitals for an injury allegedly caused by a defective prosthetic implant. HAP is a statewide association of health care institutions representing 252 hospitals licensed in the Commonwealth. HAP views itself as "the Pennsylvania health care industry's principal forum for developing public policy initiatives and for the exchange of ideas on the effective delivery of quality health care services." Amicus Brief, p. 2.

██ When reviewing an order granting preliminary objections in the nature of a demurrer, we apply the same standard as the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer. *Kyle v. McNamara & Criste,* 506 Pa. 631, 633, 487 A.2d 814, 815 (1985); *Baker v. Magnetic Analysis Corp.,* 347 Pa.Super. 188, 191, 500 A.2d 470, 472. In reviewing preliminary objections, only facts that are well pleaded, material, and relevant will be considered as true, together with such reasonable inferences that may be drawn from those facts, and preliminary objections will be sustained only if they are clear and free from doubt. *Ohio Casualty Group Insurance Company v. Argonaut Insurance Company,* 92 Pa. Cmwlth. 560, 500 A.2d 191 (1985). Preliminary objections will be sustained only where it appears with certainty that, upon the facts averred, the law will not allow the plaintiff to recover. *International Union of Operating Engineers, Local No. 66, AFL–CIO v. Linesville Construction Company,* 457 Pa. 220, 322 A.2d 353 (1974).

Under the Pennsylvania system of fact pleading, the pleader must define the issues; every act or performance essential to that end must be set forth in the complaint. *See* Pa.R.C.P. 1019; 4 Standard Pennsylvania Practice § 21:32; *see also Pike County Hotels Corporation v. Kiefer,* 262 Pa.Super. 126, 396 A.2d 677 (1978) (at a minimum, the pleader must set forth facts upon which his cause of action is based).

██ Section 402A of the Restatement (Second) of Torts provides in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Restatement (Second) of Torts. Comment f to section 402A provides that the rule "applies to any manufacturer of such a product [and] to any wholesale or retail dealer or distributor . . . ." Restatement (Second) of Torts, Comment f. *See Coyle v. Richardson–Merrell, Inc.,* 526 Pa. 208, 210, 584 A.2d 1383, 1384 (1991); *see also Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966) (adopting section 402A as the law of Pennsylvania).

A. *Hospital Liability*

The Cafazzos argue that the theory of "corporate liability" or "corporate negligence," adopted in *Thompson v. The Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991) affords a basis for extending 402A liability to hospitals. In *Thompson,* the Pennsylvania Supreme Court embraced as a theory of hospital liability

the doctrine of corporate negligence or corporate liability under which the hospital is liable if it fails to uphold the proper standard of care owed the patient. . . . It is important to note that for a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm.

*Id.* at 340, 591 A.2d at 708. This argument, however, provides no logical basis to extend strict product liability principles to a hospital; the *Thompson* court was presented with a question negligence.

In *Coyle, supra,* the Pennsylvania Supreme Court was presented with the question of whether a pharmacy should be subject to liability as a supplier in accordance with principles of strict liability found in section 402A. The Court began its analysis by considering whether extending liability would advance the purposes of section 402A. Quoting comment c to

section 402A, the Court noted the following as the rationale supporting the rule of strict product liability:

the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; [ ] the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; [ ] public policy demands that the burden of accidental injuries caused by products intended for consumption be placed *on those who market them,* and be treated as a cost of production against which liability insurance can be obtained; and [ ] the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

(Emphasis added). Citing to a previous case, *Francioni v. Gibsonia Trucking Company,* 472 Pa. 362, 372 A.2d 736 (1977), which held that section 402A applied equally to lessors and sellers, the Court identified four "pertinent factors:" (1) supplier liability makes a member of the marketing chain available to the injured plaintiff for redress; (2) strict liability provides an incentive to safety; (3) a supplier is in a better position to prevent the circulation of defective products; and (4) the supplier can distribute the cost of compensating for injuries resulting from defects by charging for it in its business. *Coyle,* 526 Pa. at 216, 584 A.2d at 1387, *citing Francioni,* 472 Pa. at 368–69, 372 A.2d at 739.

Consideration of these factors weighs against extension of 402A liability to hospitals or physicians. A hospital is not a purveyor of products or goods; it is a provider of services, an intermediary in the distribution chain of a product such as the implant device in this case. The use of the implant device was incidental to the hospital's primary function of providing medical services. *Coyle, supra; see also Podrat v. Codman–Shurtleff, Inc.,* 384 Pa.Super. 404, 558 A.2d 895 (1989) (hospital was not liable to patient under theory of strict liability for injury which resulted when medical instrument broke during

surgery, even if a charge was made for the use of the instrument as the hospital was not in the business of selling the instrument and its use was only incidental to the hospital's primary function of providing medical services).

Holding physicians and hospitals liable would do little in the way of providing an incentive to safety. The safety of the product depends not on the judgment of the physician or the hospital administration, but on the judgment of those connected to the research, development, manufacture, marketing and sale of the product. Further, as to the circulation of defective products, a hospital not involved in the development or manufacture of the product is in no better position to prevent circulation of a defective product. This necessarily follows from the previous consideration.

Distribution of cost and availability of redress for a plaintiff, as the only considerations in favor of extending liability, would, as stated in *Coyle,* "result in absolute liability rather than strict liability." 526 Pa. at 216, 584 A.2d at 1387. Relying solely on cost factors creates liability without a logical basis and confines the focus to a search for a deep pocket.

B. *Physician Liability*

Physicians, like hospitals, are providers of health care services. The physician's expertise lies in the diagnosis, treatment and cure of illness, not in the research or development of prosthetics or devices used to aid medical diagnosis or treatment. A physician is not in the business of selling products, but rather is in the profession of providing medical services. Products such as the prosthetic device in this case are supplied and utilized only as needed to deliver the professional medical service. They are incidental, or integral, to a physician's service, but they are not the focus of the physician's delivery of health care.

The Commonwealth Court, in *Hannis v. Ashland State General Hospital,* 123 Pa.Cmwlth. 390, 554 A.2d 574 (1989), rejected an argument that the distinction between sale of products and services for purposes of strict liability is merely

technical. There, the deceased patient's estate filed an action against physicians for failure to diagnose under a strict liability theory. The appellants essentially argued that the physicians' care was a "sale" for purposes of strict liability and that the sale/service dichotomy was "merely technical." *Id.* at 398, 554 A.2d at 578. The court, affirming an order sustaining preliminary objections, stated: "The courts of Pennsylvania have never extended strict liability to the services provided by a physician, and we are not willing to do so in this case." *Id.* at 398–99, 554 A.2d at 578, *citing Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). The court, though not presented with the question of a prosthetic implant or other medical device, acknowledged the sales/services distinction in the law of the Commonwealth.

Although no Pennsylvania appellate court has directly addressed the issue of physician strict liability with respect to a defective implant, other jurisdictions have refused to extend strict liability to a health care provider in similar circumstances on the grounds that the implantation or use of a medical device is incidental to the provision of services. *See, e.g., Betro v. GAC International, Inc.,* 158 A.D.2d 498, 551 N.Y.S.2d 72 (1991) (orthodontist's prescription of a night brace did not constitute "sale" of a device; prescription was incidental to medical treatment); *Goldfarb v. Teitelbaum,* 149 A.D.2d 566, 540 N.Y.S.2d 263 (1989) (insertion of an alleged defective prosthetic device was a procedure incidental to medical treatment and did not constitute a "sale"); *Carmichael v. Reitz,* 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971) (court refused to extend the doctrine of strict liability to physician for prescribing a drug which caused untoward effects in the patient); *Barbee v. Rogers,* 425 S.W.2d 342 (Tex.1968) (optometrists who had prescribed, fit and sold contact lenses were not liable on the theory of strict liability in tort); *Magrine v. Krasnica,* 94 N.J.Super. 228, 227 A.2d 539 (1967) (court refused to extend strict liability principles to a dentist for personal injuries caused to a patient when a defective needle broke in the patient's mouth; the court found that the dentist had not engaged in the "sale" of a product).

Physicians are not infallible beings; they are a class of men and women confined by an inexact science. Without a claim of negligence or intentional wrongdoing, we are reluctant to extend the principle of strict liability to those engaged in the art of healing, or to those institutions providing a forum for that art. Hospitals and physicians, unlike manufacturers, are not capable of effecting risk distribution. Thus, in accordance with the rationale behind 402A liability, we decline to find the physician or hospital in this case were "sellers" under 402A and thus decline to extend the rule of strict product liability to the hospital or physician in this case. *Coyle, supra; see also Podrat v. Codman–Shurtleff, Inc., supra.*

Order affirmed.