650 So.2d 79 (1995)
Kay PORTER, Appellant,
v.
Robert Kent ROSENBERG, M.D., F.A.C.S.; McGhan Medical Corp.; Inamed Corp.; 3-M Corp.; Cox Uphoff, International; Surgical Specialties, Inc.; Surgitek, a/K/a Surgitech; Bristol-Meyers Squibb Co.; Surgitek/Medical Engineering Corp.; Heyer-Schulte; Natural Y Surgical Specialties, Inc.; Cooper Medical Devices, Inc.; Alcon Laboratories, Inc.; Mentor Corp.; Baxter Health Care Corp.; Dow Corning Corp.; Dow Corning Wright; Dow Chemical Co.; Corning, Inc.; Dowelanco; and Surgicenter of the Palm Beaches, Appellees.
No. 93-0758.
District Court of Appeal of Florida, Fourth District.
January 4, 1995.
Motion for Certification Denied February 22, 1995.
*80 Philip M. Burlington, Caruso, Burlington, Bohn & Compiani, P.A., and Richard D. Schuler of Schuler, Wilkerson, Halvorson & Williams, P.A., West Palm Beach, for appellant.
David W. Spicer and Eugene Ciotoli, Bobo, Spicer, Ciotoli, Fulford, Bocchino, Weidner, Debovoise & Leclainche, P.A., West Palm Beach, for appellee Rosenberg.
PARIENTE, Judge.
Appellant, Kay Porter (plaintiff), a recipient of an allegedly defective breast implant, appeals the dismissal of her strict liability count against appellee, Robert Kent Rosenberg, M.D. (physician), who implanted the device, urging this court to extend the doctrine of strict liability to physicians. She claims that a physician who places a breast implant in a patient should be held strictly liable as any other distributor or seller of the product.
Because we do not find strict liability applicable to an action against a physician who supplies a product to a patient where the medical services could not have been rendered without using the product and where the predominant purpose of the transaction is the provision of medical services, we affirm the order of the trial court dismissing the complaint against the plastic surgeon with prejudice. Plaintiff pled only strict liability against the plastic surgeon and we find it inapplicable under these circumstances.
Plaintiff instituted a personal injury claim, including counts for strict liability against twenty-one separate defendants who were either manufacturers or distributors of the product to the medical community and to the general public. The product is a mammary prosthesis commonly referred to as a breast implant. The complaint separately stated that Dr. Rosenberg as the physician "recommended, promoted, distributed and/or supplied said mammary prosthesis to the general public." Plaintiff did not claim any errors, omissions or deviations in the medical procedure performed by the physician nor did she allege a failure to warn of the inherent dangers of the breast implant product. The sole basis alleged for the physician's liability was his role as seller or distributor of the breast implant product.
*81 There is no dispute that a breast implant is a product for purposes of strict liability. Causes of action in strict liability have been recognized against the manufacturer and other entities responsible for the sale and implantation of various prostheses into the human body, including breast implants. 3-M Corp. v. Brown, 475 So.2d 994 (Fla. 1st DCA 1985) (breast implant); E.R. Squibb & Sons, Inc. v. Stickney, 274 So.2d 898 (Fla. 1st DCA 1973), cert. denied, 416 U.S. 961, 94 S.Ct. 1978, 40 L.Ed.2d 311 (1974) (bone graft material); compare Artiglio v. Superior Court, 22 Cal. App.4th 1388, 27 Cal. Rptr.2d 589 (1994) (in suit brought against manufacturer of a breast implant, the court held that the California judicially-created rule barring strict liability design defect claims in prescription drug cases extended to breast implant devices available only by resort to services of a physician).
Strict liability is applicable to distributors of medical products or prostheses, such as a breast implant. Section 402A of the Restatement (Second) of Torts, which sets forth the doctrine of strict liability, was judicially adopted by the supreme court in West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), although never legislatively enacted. While West only dealt with the applicability of strict liability to manufacturers of defective products, in consonance with comment (f) to section 402A, the doctrine has subsequently been extended to all distributors of the product. Adobe Bldg. Ctrs., Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), review dismissed, 411 So.2d 380 (Fla. 1981); Visnoski v. J.C. Penney Co., 477 So.2d 29 (Fla. 2d DCA 1985); Perry v. Luby Chevrolet, Inc., 446 So.2d 1150 (Fla. 3d DCA 1984). The rationale for applying strict liability to distributors is that:
Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.
Adobe Bldg. Ctrs., 403 So.2d at 1037 (Hurley, J., concurring), citing Traynor, J., in Vandermark v. Ford Motor Co., 61 Cal.2d 256, 262, 37 Cal. Rptr. 896, 899, 391 P.2d 168, 171 (1964).
Plaintiff argues that the rationale for imposing strict liability on distributors should apply in this case. Where a physician actually transfers the product to the patient, thereby profiting from the distribution of a product, plaintiff asserts the physician should share in the losses to a consumer when that product is found to be defective.
The fundamental purpose underlying the doctrine of strict products liability is to further public safety in the use of consumer goods, by imposing liability without fault upon entities that have the ability to adequately compensate the injured party, distribute the risk of loss, and deter further production of defective products. Courts, however, have been reluctant to extend strict liability to a health care provider who utilizes the product incidental to its primary function of providing medical services.[1]
In explaining the rationale for treating health care providers differently, the Pennsylvania appellate court in Cafazzo v. Central Medical Health Servs., Inc., 430 Pa.Super. 480, 635 A.2d 151, 154 (1993), explained:
Physicians, like hospitals, are providers of medical services. The physician's expertise lies in the diagnosis, treatment and cure of illness, not in the research or development of prosthetics or devices used to *82 aid medical diagnosis or treatment. A physician is not in the business of selling products, but rather is in the profession of providing medical services. Products such as the prosthetic device in this case are supplied and utilized only as needed to deliver the professional medical service. They are incidental, or integral, to a physician's service, but they are not the focus of the physician's delivery of health care.
In many cases the health care provider is in fact more akin to the consumer or user of the product, especially where the product is not transferred to the patient but utilized incidental to the provision of medical services. In North Miami General Hosp. v. Goldberg, 520 So.2d 650 (Fla. 3d DCA 1988), the third district rejected a strict liability claim against a hospital for burns sustained by the patient from an allegedly defective electro-surgical grounding pad. However, in that case the hospital had utilized the defective piece of equipment during a surgical procedure, but had not transferred the product to the patient.
Indeed, the hospital is properly regarded as itself a consumer of the product which merely employs it in performing its actual function of providing medical services.
Id. at 652. In that situation the role of the health care provider is more analogous to that of a user of the product, rather than a distributor.
We recognize, however, that there are instances when a physician transfers a product to a patient via a medical procedure in which the physician may be performing a role that has some attributes similar to a retailer or other seller of a product. The manufacturer may be relying on the physician to promote its particular product within the chain of distribution to the general public. We further note that there is a qualitative difference between a physician distributing breast implants through implantation and utilizing a defective metal pin in a hip reconstruction. In the case of the breast implant, the procedure is being performed to implant the product; in the case of the metal pin, the use of the pin is incidental to the main procedure.
Nonetheless, we cannot ignore the fact that even with a product, such as a breast implant, a physician is exercising his or her professional judgment in determining what medical procedure to perform and then in selecting the appropriate product to utilize in connection with the procedure. The provision of the product is integrally related to the professional services and skill offered by the medical care provider. Compare Thomas v. St. Joseph Hosp., 618 S.W.2d 791 (Tex.Civ. App. 1981) (where provision of product such as hospital gown is unrelated to the essential professional relationship, strict liability may be applied.)
When a physician is engaged in providing services involving the exercise of medical judgment, causes of action arising from personal injuries or death in connection with the rendering of medical services are governed by legislative enactment. Ch. 766, Fla. Stat. (1993). Although an implant may be considered a product for purposes of strict liability, we must determine whether the adoption of the comprehensive medical malpractice statute precludes all other common law theories against physicians, hospitals or other health care providers not filed in compliance with the statute, including a strict liability action for a defective product. The medical malpractice act sets forth the method and manner for bringing a cause of action, both procedurally and substantively. An injured person would be impermissibly circumventing the requirements and restrictions of the medical malpractice statute by selectively claiming that the physician was only acting in his role as a distributor of a product when in fact the distribution was incidental to the provision of medical services.
While the language of the medical malpractice statute refers to actions for damages resulting from negligence, section 766.102, Florida Statutes (1993), courts of this state have nonetheless rejected the application of strict liability to health care providers alleged to be involved in the distribution of the product. See NME Hosps., Inc. v. Azzariti, 573 So.2d 173 (Fla. 2d DCA 1991); North Miami.
The second district in NME Hosps., without discussing the details of the transaction or the product, rejected the plaintiffs' contention *83 that because they were proceeding on a products liability theory, they should not be required to comply with the prerequisites of the medical malpractice statute:
A hospital that utilizes an alleged defective product only in the course of its primary function of providing medical services is not subject to an action in strict liability where the professional services could not have been rendered without using the product.
573 So.2d at 173. Although not explicitly stated, we read the second district's holding in NME Hosps. as an implicit application of a "predominant purpose" or "essence of the transaction" test to determine whether strict liability applies. See also North Miami, 520 So.2d at 652.
Following the rationale implicitly applied by the second district in NME Hosps., we conclude that whether or not a plaintiff may bring an action against a physician, hospital, or other health care provider for strict liability depends upon the essence of the physician-patient relationship for the particular transaction. If the medical services could not have been rendered without utilizing the product, then strict liability does not apply. If the predominant purpose of the physician-patient relationship for that transaction is the provision of medical services based upon the physician's medical judgment, skill, or expertise, the malpractice statute applies and strict liability is inapplicable.
The fact that the physician or health care provider is not solely or primarily in the business of distributing products is not the determinative factor for application of strict liability as long as distributing products is part of its business. See Restatement (Second) of Torts § 402A, cmt. f (1977); compare North Miami. Therefore, if distributing products is part of the health care provider's business and the sales or distribution aspect in the particular transaction between the health care provider and the patient predominates over the services aspect an action in strict liability may lie against the health care provider.[2]
Nevertheless, we decline to extend the doctrine of strict liability under the circumstances of this case. In her complaint, plaintiff has sued multiple defendants from manufacturers to distributors of the breast implant on multiple theories including strict liability. We perceive of no overriding public policy argument which would justify an obvious circumvention of the medical malpractice statute and an extension of strict liability to physicians under the circumstances presented here.
AFFIRMED.
POLEN and FARMER, JJ., concur.
NOTES
[1] See Cafazzo v. Central Medical Health Servs., Inc., 430 Pa.Super. 480, 635 A.2d 151 (1993) (mandibular prosthesis); Hoff v. Zimmer, 746 F. Supp. 872 (W.D.Wis. 1990) (hip prosthesis); Goldfarb v. Teitelbaum, 149 A.D.2d 566, 540 N.Y.S.2d 263 (1989) (mandibular prosthesis); Hector v. Cedars-Sinai Medical Ctr., 180 Cal. App.3d 493, 225 Cal. Rptr. 595 (1986) (pacemaker); Probst v. Albert Einstein Medical Ctr., 82 A.D.2d 739, 440 N.Y.S.2d 2 (1981) (metal spinal rod); Vergott v. Deseret Pharmaceutical Co., 463 F.2d 12 (5th Cir.1972) (intracath needle); Carmichael v. Reitz, 17 Cal. App.3d 958, 95 Cal. Rptr. 381 (1971) (prescription drug). But see Bell v. Poplar Bluff Physicians Group, 879 S.W.2d 618 (Mo. Ct. App. 1994) (mandibular implant); Karibjanian v. Thomas Jefferson Univ. Hosp., 717 F. Supp. 1081 (E.D.Pa. 1989) (hospital could be liable as distributor for chemical injected as a contrast medium  applying Pennsylvania substantive law); Providence Hosp. v. Truly, 611 S.W.2d 127 (Tex.Civ.App. 1980) (hospital liable for breach of warranty for contaminated drug).
[2] Such examples might include a nutrition doctor selling diet products or a dentist selling electric toothbrushes. Some manufacturers may rely solely or mainly on utilizing health care professionals for distribution of their products and the health care professional may rely on selling the product as part of its business as additional profit separate from provision of other medical services.