Linda **WEISSMAN**, Plaintiff,

v.

**DOW CORNING CORPORATION, Dow Chemical Co., Corning Inc. and Dr. Benito Rish, Defendants.**

**No. 92 Civ. 7820 (WCC).**

United States District Court, S.D. New York.

July 7, 1995.

pacity he had only just realized he had been

suffering from a long term disability.

Weitz & Luxenberg, P.C. (Denise M. Dunleavy, of counsel), New York City, for plaintiff.

Rende, Ryan & Downes, Llp (Wayne M. Rubin, of counsel), White Plains, NY, for defendant Dr. Benito Rish.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Linda Weissman brings the instant action against Dow Corning Corp., Corning Inc. and Dr. Benito Rish for injuries she sustained subsequent to receiving silicone injection breast augmentation from Dr. Rish in or about 1971.[1] Although the complaint origi-

---

1. The parties agreed by stipulation and order to dismiss all of plaintiff's claims against Dow Chemical Company without prejudice. *Weiss-*

nally charged Dr. Rish with failure to warn, strict products liability, negligence, fraud, and breach of warranty, the parties agreed by stipulation so ordered by this Court on March 17, 1995 to dismiss *with prejudice* all but plaintiff's fraud cause of action against Dr. Rish. *Weissman v. Dow Corning Corp.,* No. 92 Civ. 7820 (S.D.N.Y. March 17, 1995). Dr. Rish has now moved for summary judgment on this last remaining cause of action, claiming it was untimely filed. Plaintiff opposes that motion and cross-moves to reinstate her failure to warn, negligence, strict products liability, and breach of warranty causes of action. For the reasons stated below, we grant defendant's motion and deny plaintiff's cross-motion.

## BACKGROUND

While working as a waitress in 1971, Ms. Weissman became acquainted with a fellow employee who allegedly had her breasts enlarged by Dr. Rish through silicone injection. Being impressed with the results of her co-worker's augmentation and feeling that the procedure could also improve her figure, plaintiff made an appointment to undergo the injections.

Although initially pleased with the results, by the early 1980's plaintiff began noticing signs that the procedure led to previously undisclosed and undesirable side effects. At first plaintiff started developing lumps in her breasts. Wishing to rule out cancer, she visited Dr. Bernard Polatsch, an obstetrician, who sent her to a cancer specialist. Dr. Polatsch recommended that plaintiff get a mammogram. Suspecting that the silicone augmentation was behind the lumping and frightened at the prospect of having to undergo surgery, plaintiff did not then have a mammogram or, after the cancer specialist performed a biopsy, return to receive the report and diagnosis or any kind of treatment.

By 1985, more lumps began to develop and both of her breasts were becoming hard. Plaintiff then started seeing Dr. Maurice Cohen who informed her that the silicone made it impossible to use mammograms to screen her for possibly cancerous tumors. Warning her that the silicone was "toxic poison," he strongly recommended that she have it removed. Failing to heed Dr. Cohen's advice, plaintiff moved to Las Vegas, Nevada in 1988, but continued to visit various doctors who all recommended removal of the silicone. Finally, after her breasts became extremely hard, and she developed even more lumps, a rash on her inner arm, and aching joints, she began exploring ways to have the silicone removed. In 1993, plaintiff went to UCLA Medical Center to receive a tram-flap procedure whereby most of her remaining breast tissue along with the silicone that had not already migrated to other parts of her body were removed.

Plaintiff filed the instant suit in 1992 against Dr. Rish, Dow Corning Corp., Dow Chemical Co., and Corning Inc. The complaint alleges that Dr. Rish at no time informed her of the risks of the procedure—that the silicone might cause lumping in or hardening of her breasts, or migrate to other parts of her body, causing systemic disturbances or immunological impairment—or that during the course of her treatment silicone was outlawed for use by injection. Plaintiff argues that, based on these nondisclosures and his manufacture, conversion, promotion and/or distribution of silicone, Dr. Rish is liable for failure to warn, fraud, strict products liability, negligence, and breach of warranty.

In a related action pending before Judge Cedarbaum of this Court, *Stolarski v. Rish,* No. 92 Civ. 3596 (S.D.N.Y. filed March 15, 1992), Dr. Rish allegedly stated at his April 29, 1993 deposition that he only used Dow Corning Medical Grade Silicone in performing injections and that he never altered the silicone before its use. Based on this testimony, plaintiff signed a stipulation of discontinuance of her failure to warn, strict products liability, negligence, and breach of warranty causes of action *with prejudice* on February 15, 1995, so ordered by this court on March 17, 1995.

Defendant Rish has moved for summary judgment claiming that plaintiff's remaining fraud cause of action is barred by the appli-

cable statute of limitations. Although apparently granting that under general statute of limitations provisions for fraud and medical malpractice the action is untimely, plaintiff contends instead that a 1993 law extending the period of limitations for personal injury or death caused by silicone is controlling in this case. In addition, plaintiff cross-moves to reinstate her previously discontinued failure to warn, strict products liability, negligence, and breach of warranty causes of action. Plaintiff asserts that she agreed to dismiss these claims because she erroneously believed, based Dr. Rish's prior deposition testimony, that Dr. Rish could not be liable under products liability theories. However, in connection with this case, Dr. Rish testified at a March 3, 1995 deposition that he had received unmarked silicone from one or more physicians in California which he mixed together with his Dow Corning Medical Grade Silicone to perform the injections. Based on this testimony she asserts that Dr. Rish is liable as a product seller/manufacturer.

## DISCUSSION

■ The parties have proceeded on the assumption that New York law controls the issues in this case. Because both parties were residents of New York at the time of the challenged medical procedure, which was performed in New York, we do likewise. New York courts have repeatedly held that, in the absence of legislation to the contrary, a statute of limitations begins to run when a wrong occurs despite the victim's lack of awareness of the injury. *Steinhardt v. Johns–Manville Corp.*, 54 N.Y.2d 1008, 1010, 430 N.E.2d 1297, 1298–99, 446 N.Y.S.2d 244, 245–46, *modified,* 55 N.Y.2d 802, 432 N.E.2d 139, 447 N.Y.S.2d 437 (1981). Therefore, at least historically under New York law, actions for personal injury were limited to three years from the date of the injury, whether or not a plaintiff had yet discovered it. N.Y.Civ.Prac.L. & R. 214(5) (McKinney 1990). Similarly, the statutory period of limitations for medical malpractice prior to 1975 was three years, which began to run at the

time of the negligent act or omission. *Mirabile v. Profy,* 172 A.D.2d 729, 730, 569 N.Y.S.2d 115, 116 (N.Y.App.Div.1991). In certain contexts, however, the legislature has departed from this "date-of-injury" rule and instead opted for a limited "date-of-discovery" provision. For instance, the statutory period of limitations for fraud is six years from the date of the fraudulent act, or two years from the date that the plaintiff discovered, or could, with reasonable diligence, have discovered the fraudulent act, whichever is longer. *Rodgers v. Roulette Records Inc.,* 677 F.Supp. 731, 737 (S.D.N.Y.1988); N.Y.Civ.Prac.L. & R. 213(8), 203(g) (McKinney 1990 & Supp.1995).

■ In 1986, in light of the inequities of imposing the usual date-of-injury rule on toxic tort plaintiffs who fail to discover their latent injuries within the limitations period, the New York legislature enacted a date-of-discovery rule with respect to this category of claims. N.Y.Civ.Prac.L. & R. 214–c (McKinney 1990 & Supp.1995). That statute extends the limitations period for actions to recover damages for personal injury caused by the latent effects of exposure to any substance to three years from the date that the injury is, or by reasonable diligence could have been, discovered.[2] *Id.*

As sweeping as this change was, because many patients injured by silicone products were unaware of the causes of their injuries until after § 214–c's three-year discovery window had closed, § 214–c still prevented these plaintiff from maintaining personal injury claims based on their exposure to silicone. Therefore, in 1993 the legislature passed a revival statute giving parties previously barred from bringing personal injury actions based on silicone a one-year grace period in which to file their claims. That statute reads in pertinent part:

> Every cause of action for personal injury or death caused by the effects of silicone gel injected or implanted within the body ... which is barred as of the effective date of this act ... is hereby revived and an action thereon may be commenced within

2. In addition, the statute specifically exempts actions for medical malpractice from its cover-

age. N.Y.Civ.Prac.L. & R. 214–c(5) (McKinney 1990).

one year of the effective date of this act. . . .

Act of July 21, 1993, ch. 419, 1993 N.Y.Laws [hereinafter "Chapter 419" or the "1993 Revival Act"]. Like § 214–c, however, the statute specifically exempts medical malpractice actions from its coverage.

## A. Fraud

■ Defendant has moved for summary judgment on plaintiff's fraud claim because it was not filed within six years of the alleged fraudulent act or within two years after plaintiff discovered or could, with reasonable diligence, have discovered the fraud. In response, plaintiff asserts that her fraud cause of action, essentially "an action for personal injury," is revived under Chapter 419's provisions. As plaintiff apparently does not dispute defendant's contention that, absent the 1993 Revival Act, her fraud action would be untimely,[3] the sole issue for us to decide on defendant's motion is the applicability of that law to the instant case.[4]

Generally, this Court will look first to decisions of the New York Court of Appeals to ascertain and interpret controlling state law. *Gonzalez v. Rutherford Corp.*, 881 F.Supp.

829, 834 (E.D.N.Y.1995). Although that Court has yet to address this issue, the Appellate Division, in the context of § 214–c, has rejected plaintiff's precise contention. *Matter of Plaza v. Estate of Wisser*, 211 A.D.2d 111, 626 N.Y.S.2d 446 (N.Y.App.Div. 1995). In *Plaza*, a plaintiff sued his deceased companion's estate for, among other things, his companion's fraudulent concealment of his HIV status which resulted in the transmission of the disease to the plaintiff. The trial court, citing N.Y.Civ.Prac.L. & R. 203(f) and 213(8) (McKinney 1990),[5] dismissed the fraud claims because more than two years had elapsed since the plaintiff was aware that the decedent was HIV positive and more than six years had passed since the plaintiff began engaging in intimate contact with the decedent. On appeal, the plaintiff argued that the provision of § 214–c(2) establishing a limitations period of three years after actual or constructive discovery for "action[s] . . . for personal injury" was applicable to a claim of fraud resulting in personal injury. The appellate division, rejecting that argument, instead applied the general six-year limitations period. *Plaza*, 626 N.Y.S.2d at 451–52.

---

3. We note that plaintiff does contest certain statements of fact in defendant's Rule 3(g) statement. After examining plaintiff's deposition, however, we find that plaintiff's fraud claim would be barred by the fraud statute of limitations.

In her opposing memorandum, plaintiff does not address when she first became aware that her silicone injections failed to live up to the representations made by Dr. Rish. However, in her deposition plaintiff clearly states that prior to moving to Las Vegas in 1989 she complained to Dr. Cohen about the lumping, hardening, and pain associated with her breasts. Deposition of Linda Weissman, Feb. 7, 1995, at 444, 452, 454 [hereinafter Weissman Dep.]. Dr. Cohen informed plaintiff that he attributed these conditions to silicone injections performed by Dr. Rish. *Id.* at 456. Given this testimony, we think that, as a matter of law, at least by 1989 plaintiff discovered or could, through the exercise of reasonable diligence, have discovered the falsity of Dr. Rish's alleged representations that the procedure was completely safe, Weissman Dep., at 692, and that her breasts would always be firm and young looking, Weissman Dep., at 704. *See Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983) (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6, 7 (1895)) (plaintiff imputed knowledge of fraud if "circumstances are such as to suggest to a person of ordinary intelligence

that he has been defrauded"); *K & E Trading & Shipping Inc. v. Radmar Trading Corp.*, 174 A.D.2d 346, 347, 570 N.Y.S.2d 557, 558 (N.Y.App.Div.1991). Moreover, at that time it was clear to plaintiff, or could have been clear through the exercise of reasonable diligence, that the lumping and hardness were a material effect of the augmentation procedure that Dr. Rish had failed to mention. Weissman Dep., at 704. Since plaintiff did not institute her suit until October, 1992, at least three years later, her fraud claim is untimely under §§ 213(8) and 203(g).

4. Defendant Rish also argues that plaintiff's fraud cause of action is essentially a medical malpractice action and should be dismissed for failing to allege damages separate from what is in essence a malpractice claim. *Spinosa v. Weinstein*, 168 A.D.2d 32, 41–42, 571 N.Y.S.2d 747, 753 (N.Y.App.Div.1991) (dismissing fraud cause of action for failing to allege damages separate from injuries due to medical malpractice). We need not reach this issue because we find that Chapter 419 does not revive plaintiff's fraud claim against Dr. Rish.

5. Section 203(f) was recodified as § 203(g) in 1992. *See* N.Y.Civ.Prac.L. & R. 203(g) (McKinney Supp.1995).

In the absence of any plain ruling by a state's highest court, the rulings of the intermediate state courts "are entitled to persuasive, if not decisive consideration." *Sphere Drake Ins. Co. v. P.B.L. Entertainment, Inc.,* 30 F.3d 21, 23 (2d Cir.1994), *vacated on other grounds,* 52 F.3d 22 (2d Cir.1995) (citation omitted). Indeed, absent "convincing evidence that the [Court of Appeals] would decide differently," we are generally obligated to follow Appellate Division rulings. *Id.* (quoting *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 338, 85 L.Ed. 284 (1940)). Although *Plaza* did not interpret the meaning of "an action for personal injury" under the 1993 Revival Act, because that law makes the same reference to "personal injury" as § 214–c, the holding of *Plaza* is seemingly equally applicable to its construction.[6] However, because *Plaza* is not directly on point, we must "endeavor to predict how the highest court of the state" would resolve this issue. *U.S. East Telecommunications, Inc. v. U.S. West Communications Services, Inc.,* 38 F.3d 1289, 1296 (2d Cir.1994). Based on New York statute of limitations provisions and common law drawing distinctions between fraud and personal injury actions, we think that the New York Court of Appeals, were it to decide this issue, would follow the holding of *Plaza* and likewise determine that actions for fraud, even though personal injury results from the fraud, are not "actions for personal injury" under the meaning of the 1993 Revival Act.

First, while the New York legislature did not specifically define "personal injury" in Chapter 419, other limitations statutes clearly make a distinction between fraud and personal injury actions. However, the legislature, presumably aware of those distinctions, did not explicitly include fraud actions within the scope of Chapter 419's revival provisions.

Section 213(8) sets out the general six-year limitations period for fraud actions. On the other hand, § 214(5) creates a separate three-year limitations period for "actions to recover damages for a personal injury ..." Clearly "fraud" and "personal injury" actions are two separate categories of cases for statute of limitations purposes. Moreover, at the time that § 214–c was passed, the legislature amended § 214(5) to reflect the fact that § 214–c was an exception to its general personal injury limitations provisions, but made no similar exception to the fraud statute of limitations contained in § 213(8). Against this backdrop, the legislature enacted the 1993 Revival Act employing language similar to § 214–c but again making no reference to fraud causes of actions. We must assume that the legislature was aware of the distinction drawn between fraud and personal injury actions and did not intend to give a different meaning to "an action for personal injury" under Chapter 419 than that explicitly ascribed to similar language in § 214–c. Because "action[s] for personal injury" refers to a specific category of cases addressed separately under New York statutes of limitations, we think the Court of Appeals would hold that the language does not encompass an action based on fraud.

Second, even apart from Chapter 419's legislative context, under New York law fraud and personal injury actions are substantively distinct. In addition to requiring proof of scienter, the damages available for fraud do not include pain and suffering, a category generally available under personal injury actions. *Rivera v. Wyckoff Heights Hosp.,* 184 A.D.2d 558, 561, 584 N.Y.S.2d 648, 650 (N.Y.App.Div.1992); *Sanders v. Rosen,* 159 Misc.2d 563, 571, 605 N.Y.S.2d 805, 810 (N.Y.Sup.Ct.1993) (citing *Hanlon v. Macfadden Publications, Inc.,* 302 N.Y. 502, 511, 99 N.E.2d 546, 551 (1951)). Therefore, although a fraud claim may encompass some damages that stem from personal injuries, in the strictest sense it cannot be thought of as a personal injury action. Apparently the New York legislature has reached the same conclusion by creating separate statute of limita-

---

**6.** Although we note that § 214–c specifically applies to "action[s] to recover damages for personal injury," while Chapter 419 covers "action[s] for personal injury," we see little distinction between these wordings. If anything, a fraud claim based on personal injuries could more easily be construed as an action to recover damages for personal injury than as "an action for personal injury." The *Plaza* court has rejected that construction, however. *Plaza,* 626 N.Y.S.2d at 451–52.

tions provisions for fraud and personal injury actions. Moreover, plaintiff has cited no instance in which fraud causes of action seeking remuneration for personal injuries were treated as personal injury actions under either § 214–c or Chapter 419.

■ We note that New York courts generally focus on the gravamen of a cause of action rather than its label to determine the applicable statute of limitations. *Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 264, 11 N.E.2d 902, 904 (1937). Applying this principle, some courts have either dismissed fraud causes of action or treated them as products liability or medical malpractice claims for statute of limitations purposes when plaintiffs have failed to allege fraud damages distinct from an underlying personal injury action. *New York Seven–Up Bottling Co. v. Dow Chemical Co.*, 96 A.D.2d 1051, 1052–53, 466 N.Y.S.2d 478, 480 (N.Y.App.Div.1983), *aff'd*, 61 N.Y.2d 828, 462 N.E.2d 150, 473 N.Y.S.2d 973 (1984) (refusing to apply fraud statute of limitations for failing to allege damages separate from injuries due to defective product); *Spinosa v. Weinstein*, 168 A.D.2d 32, 41–42, 571 N.Y.S.2d 747, 753 (N.Y.App.Div.1991) (dismissing fraud cause of action for failing to allege damages separate from injuries due to medical malpractice); *Coopersmith v. Gold*, 172 A.D.2d 982, 984, 568 N.Y.S.2d 250, 252 (N.Y.App.Div. 1991) (same). We need not decide whether to construe plaintiff's fraud claim likewise in this context, however, because even if we were to treat her claim as a malpractice action, it would still be barred. Plaintiff filed her action long after the three-year medical malpractice limitations period had run and the 1993 Revival Act specifically exempts its coverage from medical malpractice actions. In addition, as articulated in Part B. below, we find no basis for construing her fraud claim as a products-liability-based action.

Because the legislature chose to revive personal injury actions, a category of cases

distinct under New York common law and statutes of limitations from actions for fraud, we do not think that Chapter 419 was intended to reach plaintiff's fraud cause of action. Therefore, we must grant defendant's motion for summary judgment.

### B. Products Liability

Plaintiff cross-moves to reinstate her negligence, failure to warn, breach of warranty, and strict products liability causes of action against Dr. Rish. Although she previously dismissed those claims with prejudice, because subsequently Dr. Rish allegedly changed his testimony by admitting to mixing Dow Corning silicone with a second unknown brand of silicone prior to injecting it into plaintiff, plaintiff contends that she now has a basis to maintain these claims against Dr. Rish as a manufacturer and/or seller of a defective product.

Putting aside for the moment plaintiff's agreement to dismiss these claims with prejudice, Rule 15, Fed.R.Civ.Pro., directs the Court to grant freely motions to amend the pleadings in the interest of justice. Although a change in testimony which provides a basis for previously dismissed claims may implicate the interests of justice, because plaintiff's causes of action fail to state a claim under New York law, we deny her motion to amend.

■ Plaintiff seeks to add these causes of action based on Dr. Rish's status, not as a doctor, but as a manufacturer and/or seller of a defective product.[7] Under New York law, a plaintiff injured by a defective product may seek damages on the basis of any one or more of four liability theories: express contract, implied contract, negligence, and strict products liability. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106, 450 N.E.2d 204, 207, 463 N.Y.S.2d 398, 401 (1983). Such a plaintiff may recover against any party responsible for placing the defective product in

---

**7.** We note that if plaintiff were suing Dr. Rish for negligence based on his status as a doctor, she would be asserting a medical malpractice claim. *See Stander v. Orentreich*, 627 N.Y.S.2d 879, 882 (N.Y.Sup.Ct.1995) ("When the duty owing to the plaintiff by the defendant arises from the physician/patient relationship or is substantially relat-

ed to medical treatment, the breach thereof gives rise to an action sounding in medical malpractice as opposed to simple negligence."). However, the three-year statute of limitations in effect when plaintiff received the injections would bar such a claim. *Mirabile*, 172 A.D.2d at 730, 569 N.Y.S.2d at 116.

the marketplace, including manufacturers, distributors, retailers, processors, and makers of component parts. *Kirby v. Rouselle Corp.*, 108 Misc.2d 291, 295, 437 N.Y.S.2d 512, 515 (1981). However, in the instant case, because plaintiff has not supplied any factual basis to support her claim that Dr. Rish was either a manufacturer or seller of the silicone that he used for injections, she cannot maintain any of these products-liability-based claims.

### 1. Seller/Distributor

The Court of Appeals has squarely held in *Perlmutter v. Beth David Hospital*, 308 N.Y. 100, 123 N.E.2d 792 (1954), that medical care providers are not sellers for products liability purposes. In that case, a plaintiff sued a hospital for breach of warranty for "selling" her contaminated blood used in a transfusion. The court, construing the hospital's contract with the plaintiff as one for services, refused to apply the warranties usually arising from sales to the plaintiff's purchase of the blood in the course of her treatment. At the heart of the court's holding was its reluctance to impose liability irrespective of fault on the hospital for administering medical services. *Id.* at 106–07, 123 N.E.2d at 795. As the Court of Appeals has more recently stated, "the exacting warranty standards for imposing liability without proof of fault will not be imported from the law of sales to cast purveyors of medical services in damages." *Milau Associates, Inc. v. North Avenue Development Corp.*, 42 N.Y.2d 482, 486, 368 N.E.2d 1247, 1249, 398 N.Y.S.2d 882, 884 (1977). Despite the Court's reliance on the sale/service distinction under contract law to reach its holding, other courts have extended this rule into the strict products liability arena. *Probst v. Albert Einstein Medical Center*, 82 A.D.2d 739, 440 N.Y.S.2d 2, 3 (N.Y.App.Div.1981) (insertion of metal rod in patient's back was not "sale" of product for purpose of breach of warranty and strict products liability claims); *Betro v. GAC International, Inc.*, 158 A.D.2d 498, 499, 551

N.Y.S.2d 72, 72 (N.Y.App.Div.1990) (prescription of night brace in the course of treatment did not constitute "sale" of product for breach of warranty and strict products liability claims).

█ In the instant case, as in *Perlmutter*, plaintiff primarily solicited the medical services of Dr. Rish. Plaintiff was not seeking to purchase a quantity of liquid silicone or even larger breasts, she was primarily contracting for Dr. Rish's professional services in augmenting her breasts by silicone injection. Absent services of the type provided by Dr. Rish, plaintiff would have been unable to obtain the augmentation she desired. The "sale" of silicone was merely incident to those services. We think this case falls squarely within the rule articulated in *Perlmutter*.

Plaintiff attempts to distinguish *Perlmutter* by arguing that that case involved "health" care while the instant case involves a purely elective, cosmetic procedure not intended to improve plaintiff's health. Plaintiff's Memorandum of Law, at 10 n. 1. That argument is unpersuasive. *Perlmutter* turns on the standard of care applicable to the medical profession in general, not on the type of care provided. While *Perlmutter* cites the risks and dangers inherent in "the art of healing" as a reason for rejecting faultless liability in the medical services context, those risks and dangers were equally present in the procedure plaintiff underwent. The fact that plaintiff was or was not intended to be "healed" by the medical service has little, if any, legal significance.[8] Moreover, the type of medical services provided does not transform what is primarily a service into the sale of a product.

Plaintiff also cites *Volk v. City of New York*, 284 N.Y. 279, 30 N.E.2d 596 (1940), arguing that the Court of Appeals therein allowed a plaintiff to sue a hospital in negligence as a seller of a defective morphine injection. However, *Volk* was not based on a products liability theory growing out of the

---

**8.** We are not even sure that the distinction between a cosmetic procedure and "an act of healing" is susceptible to objective, legal articulation. Many legitimate medical procedures undoubtedly serve both purposes. However, we do not think

that the Court of Appeals intended the level of care exacted from the medical profession to turn on the subjective purpose behind the procedure undertaken.

hospital's status as a seller, but on the negligent administration of hospital medical supplies. Although the hospital apparently knew that the morphine supply was contaminated, it did not remove the medicine from the supply room.

As both *Volk* and *Perlmutter* hold, plaintiff can maintain an action against Dr. Rish based on negligence. However, because his alleged negligence concerned his medical skill and judgment in performing services to a patient, not his sale of a defective product, that action would be for medical malpractice not product liability. *Stander,* 627 N.Y.S.2d at 882. *Volk* does not hold that a medical care provider may be sued for negligence based on a theory that it is a seller of a defective product, but because of negligence in the performance of a hospital administrative function. Here, because Dr. Rish primarily provided plaintiff medical services, under *Perlmutter* plaintiff may not maintain her failure to warn, negligence, breach of warranty, and strict products liability causes of action against Dr. Rish on the basis that he was a seller or distributor of a defective product.

### 2. Manufacturer

Plaintiff next argues that because Dr. Rish mixed Dow Corning silicone with a second, unknown source of silicone, Dr. Rish can be sued in his status as a product manufacturer separate and distinct from a medical malpractice action. *See Stander v. Orentreich,* 627 N.Y.S.2d 879, 882 (N.Y.Sup.Ct.1995). In *Stander,* a doctor, using his skills as a chemist, attempted chemically to reprocess non-medical grade silicone, unacceptable for injection into humans, into medical grade silicone, but failed due to his negligence. Noting that plaintiff's cause of action based on negligence stemmed from the doctor's status as a chemist, not from the physician/patient relationship, the court sustained the plaintiff's negligence claim and found the action timely under the 1993 Revival Statute. *Id.* 627 N.Y.S.2d at 883–84.

■ On the facts of this case, we do not think that the Court of Appeals would uphold plaintiff's product-based causes of action on a theory that Dr. Rish was a manufacturer of a defective product. Even if the Court were to accept the reasoning of *Stander,* the instant case is readily distinguishable. In *Stander,* the doctor chemically altered the silicone before injecting it into the plaintiff. On the other hand, plaintiff herein has supplied no facts to support a contention that the silicone mixture was in any way chemically altered by Dr. Rish's mixing process; much less that the chemical alteration was the source of her injuries. Instead, she alleges generally that, at the time she underwent the augmentation procedure, silicone of any type was unfit for injection into humans for any purpose including breast enhancement, and that Dr. Rish did not inform her of that fact. Because plaintiff does not even allege, much less establish that the "mixing" led to her injuries, she has supplied an insufficient basis for a failure to warn, negligence, strict products liability, or breach of warranty cause of action based on Dr. Rish's status as a manufacturer of a defective product. Therefore, we must deny plaintiff's motion to reinstate these causes of action against defendant Rish.

### CONCLUSION

Because the statute of limitations had run on plaintiff's fraud claim prior to her initiating suit against Dr. Rish in 1992, and the 1993 Revival Act does not revive that cause of action, Dr. Rish's motion for summary judgment is granted. Plaintiff's cross-motion to reinstate her negligence, failure to warn, strict products liability, and breach of warranty causes of action is denied.

SO ORDERED.