503 S.E.2d 445

### In re BREAST IMPLANT PRODUCT LIABILITY LITIGATION.

No. 24793.

Supreme Court of South Carolina.

Heard Feb. 2, 1998.

Decided June 1, 1998.

Terry E. Richardson, Jr., and A. Hoyt Rowell, III, both of Ness, Motley, Loadholt, Richardson & Poole, Charleston; D. Michael Parham, of Parham & Smith, Greenville; Kenneth M. Suggs, of Suggs & Kelly, Columbia; Joseph G. Wright, of Wright Law Offices, Anderson; Liaison Counsel for Plaintiffs.

Ernest J. Nauful, Jr.; William L. Pope, of Pope & Rodgers; and Andrew F. Lindemann, of Ellis, Lawhorne, Davidson & Sims, Columbia, Liaison Counsel for Healthcare Defendants.

William M. Grant, Jr., of Grant & Leatherwood, P.A., Greenville, Liaison Counsel for Manufacturer Defendants.

Heyward E. McDonald, of McDonald, McKenzie, Rubin, Miller & Lybrand, Columbia, for Amicus South Carolina Dental Association.

Alexia Pittas–Giroux, of Cordray Law Firm, Charleston, for South Carolina Trial Lawyers.

William A. Prince, West Columbia, for Amicus South Carolina Hospital Association.

Stephen P. Williams, Columbia, for Amici South Carolina Medical Association & American Medical Association.

TOAL, Acting Chief Justice:

We granted a writ of certiorari to review certain questions pertaining to the liability of health care providers ("Healthcare Defendants") for use of medical devices, such as breast implants.

### FACTUAL/PROCEDURAL BACKGROUND

In August 1993, Chief Justice David W. Harwell assigned Judge Henry F. Floyd to dispose of all pre-trial motions and

other matters arising out of the breast implant litigation then pending, and to be subsequently filed, in this state's court system. In April 1995, Chief Justice Ernest A. Finney, Jr. issued an order granting permission to Judge Floyd to promulgate a Case Management Order regulating pre-trial proceedings in the breast implant cases.

In November 1996, Judge Floyd issued an order addressing the defendants' motion to dismiss the master complaint. The circuit court dismissed certain of the causes of action in the master complaint. Among the causes of action not dismissed were those for strict liability, breach of implied warranties, and breach of express warranty.[1] After Plaintiffs proposed an amended master complaint, adding a cause of action for the common law warranty of soundness and quality, the defendants again moved to dismiss the complaint. Judge Floyd denied the motion. The circuit court then, *sua sponte,* moved to certify to this Court two questions related to the applicability of S.C.Code Ann. § 15–73–10 (1976) and Restatement (Second) of Torts § 402A to Healthcare Defendants.

In addition, Healthcare Defendants petitioned this Court for a writ of certiorari to review Judge Floyd's orders regarding the applicability of strict liability and warranty causes of action to Healthcare Defendants. In March 1997, we issued an order granting Healthcare Defendants' petition. We found that there is no provision, under Rule 228(a), SCACR, for this Court to answer questions certified by a state circuit judge; however, we agreed with Judge Floyd that very important questions of law need to be answered at this time. Accordingly, the request for certification was denied, but the petition for a writ of certiorari was granted.[2]

---

1. Other causes of action not dismissed were those for fraud and deceit, negligent misrepresentation, and fraudulent concealment. Causes of action for negligence, negligent undertaking (Restatement (Second) of Torts § 324), and medical negligence were dismissed only as to select defendants.

2. Although we will not generally accept matters on a writ of certiorari that can be entertained in the trial court or on appeal, a writ of certiorari may be issued when exceptional circumstances exist. This matter presents such a case. Novel questions of law concerning issues of significant public interest that are contained in numerous state and federal actions are involved in this matter. A decision by this Court

Accordingly, the following questions are before us:

1. May a health care provider be held strictly liable under S.C.Code Ann. § 15–73–10 for a medical device or instrument used in the course of treating a patient?

2. May a health care provider be held liable for the breach of implied warranties under Article II of the Uniform Commercial Code with regard to a medical device or instrument used in the course of treating a patient?

3. May a health care provider be held liable for the breach of an express warranty under Article II of the Uniform Commercial Code with regard to a medical device or instrument used in the course of treating a patient?

4. May a health care provider be held liable for the breach of a common law warranty of soundness and quality with regard to a medical device or instrument used in the course of treating a patient?

## LAW/ANALYSIS

### A. STRICT PRODUCTS LIABILITY

■ In his November 1996 order, Judge Floyd ruled that a health care provider may be held strictly liable under the Defective Products Act, S.C.Code Ann. § 15–73–10 to –30 (1976). Before this Court, Healthcare Defendants argue that a health care provider cannot be held strictly liable under S.C.Code Ann. § 15–73–10 for a medical device or instrument used in the course of treating a patient. We agree.

#### 1. SOUTH CAROLINA AUTHORITY

Section 15–73–10 provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his

---

would serve the interests of judicial economy by eliminating numerous inevitable appeals raising these issues.

We reiterate that this Court will not issue a writ of certiorari merely to relieve a circuit court's burden of deciding difficult issues in high profile cases. However, as Judge Floyd very appropriately notes, this is not only an exceptional case of great public interest, but is also one presenting novel questions of law, which, to best serve the interests of judicial economy, should be answered at this time.

property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

 (a) The seller is engaged in the business of selling such a product, and

 (b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

 (a) The seller has exercised all possible care in the preparation and sale of his product, and

 (b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

S.C.Code Ann. § 15–73–10. This provision, which was adopted by the General Assembly in 1974, codified, nearly verbatim, Restatement (Second) of Torts § 402A.

The determinative issue in this case is whether a health care provider, such as a hospital or physician, is a "seller" within the meaning of section 15–73–10. Plaintiffs argue that section 15–73–10 does not provide an exemption for health care providers; therefore, the statute is binding upon all "sellers," including health care providers. They assert that unlike S.C.Code Ann. § 44–43–10 (1985),[3] which specifically exempts providers of items such as blood products from implied warranties of merchantability and fitness,[4] no such exemption has been set forth in section 15–73–10. This is a reasonable argument based on rules of statutory construction; however, it fails to take into account case precedent that has specifically addressed this issue.

---

3. S.C.Code Ann. § 44–43–10 provides:

 The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues such as corneas, bones or organs, whole blood, plasma, blood products or blood derivatives. Such human tissues, whole blood, plasma, blood products or blood derivatives shall not be considered commodities subject to sale or barter and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service.

4. *See Samson v. Greenville Hosp. Sys.*, 295 S.C. 359, 368 S.E.2d 665 (1988).

South Carolina cases, as well as persuasive authority from other jurisdictions, dictate that health care providers are not "sellers" under Restatement § 402A. *DeLoach v. Whitney,* 275 S.C. 543, 273 S.E.2d 768 (1981) provides the analytic starting point for answering the question before us. In *DeLoach,* the plaintiff had won four of defendant's tires in a raffle. The defendant installed these tires on plaintiff's car. During the installation, a deteriorated valve stem, not a part of the tire, was left on the wheel. Some time later, the valve stem ruptured while the car was being driven, causing the car to go off the road, thereby injuring plaintiff. The plaintiff brought an action against the defendant under strict tort liability. The defendant moved for a directed verdict on the issue of strict liability, arguing there had been no sale to bring the transaction within section 15–73–10. The trial court denied the motion, finding services to be included within the scope of section 15–73–10. We disagreed. Thus, *DeLoach* held that services are not included within the scope of section 15–73–10.

However, *DeLoach* also contains language which rejects the argument that strict liability includes the negligent installation of a non-defective product. Thus, the opinion is not entirely clear whether it was deciding that services generally were excluded from the scope of section 15–73–10, or whether just *negligent* services provided in connection with *non-defective* products were excluded from section 15–73–10.

This question was clarified by *Samson v. Greenville Hospital System,* 297 S.C. 409, 377 S.E.2d 311 (1989), wherein we explicitly stated that section 15–73–10 did not apply to services. Citing *DeLoach,* we declared:

> South Carolina Code Ann. § 15–73–10 (1976), which is based on Section 402A of the Restatement (Second) of Torts, imposes strict liability in tort upon the suppliers of defective products. *This section applies only to products and not to services.*

*Samson,* 297 S.C. at 410, 377 S.E.2d at 311 (emphasis added). The issue in *Samson* was whether blood was a product or service under section 15–73–10. We found that the Legislature did not intend for blood to be classified as a product.

■ Thus, when analyzed together, *DeLoach* and *Samson* teach that providers of services may not be held liable under section 15–73–10. The pivotal question then, in this case, is whether health care providers, including those who perform breast implant procedures, offer services or products. In analyzing this question, we must consider whether the essence of the transaction is the provision of a service or a product. We hold that health care providers who perform breast implant procedures are, in essence, providing a service. Although the breast implant procedure requires the use of a product, the implant, the health care provider is fundamentally and predominantly offering a service. The provider must have medical knowledge and skill to conduct the procedure. He must advise the patient of the medical consequences and must recommend to the patient the preferable type of procedure. The product may not be purchased independently of the service. One does not "buy" a breast implant procedure in the same way as one would buy a product, such as a lawnmower. At its heart, the breast implant procedure is a service and not a product.

Case law from other jurisdictions supports the product/service distinction delineated in South Carolina cases: "In general, the courts have refused to apply the concept of strict liability in tort to a person rendering professional or nonprofessional services, where injury occurs through a defective product used by the person rendering such services, or as a result of allegedly defective services themselves." American Law of Products Liability § 1:77, at 84 (T. Travers ed., 3d ed. 1987). Some jurisdictions have specifically addressed the issue of whether health care providers may be held strictly liable under products liability law. An overwhelming majority of courts have responded in the negative.

A number of courts have set forth thoughtful analyses of the view that health care professionals and institutions are providers of services, rather than sellers of products, for purposes of strict liability in tort. The following is a sample of leading cases that have discussed the applicability of products liability standards to the health care industry:

In *Hector v. Cedars–Sinai Medical Center,* 180 Cal.App.3d 493, 225 Cal.Rptr. 595 (1986), it was held that a hospital was

not strictly liable for implantation of a defective pacemaker. The California Court of Appeals wrote:

> The essence of the relationship between hospital and patient is the provision of professional medical services necessary to effect the implantation of the pacemaker—the patient does not enter the hospital merely to purchase a pacemaker but to obtain a course of treatment which includes implantation of a pacemaker.... As a provider of services rather than a seller of a product, the hospital is not subject to strict liability for a defective product provided to the patient during the course of his or her treatment.

*Hector,* 225 Cal.Rptr. at 599–600.

More recently, in *Cafazzo v. Central Medical Health Services, Inc.,* 542 Pa. 526, 668 A.2d 521 (1995), the Pennsylvania Supreme Court, in a case of first impression, decided that hospitals and physicians cannot be held subject to strict liability under the Restatement § 402A for defects in a product incidental to the provision of medical services. The court wrote that the provision of medical services is to be regarded as qualitatively different from the sale of products. The case posited that the thrust of the inquiry is not whether a separate consideration is charged for the products used in the exercise of medical skill, but what service is performed to restore or maintain the patient's health.

In *Ayyash v. Henry Ford Health Systems,* 210 Mich.App. 142, 533 N.W.2d 353 (1995), *appeal denied,* 450 Mich. 992, 549 N.W.2d 561 (1996), the Michigan Court of Appeals declined to impose strict products liability on health care providers for temporomandibular joint implants. The court stated that because the primary function of physicians and hospitals is to provide care, not to manufacture or distribute products, those economic theories that underlie the imposition of strict liability upon makers and sellers of products (e.g. spreading the risk, redistribution of wealth, and problems of proof and deterrence) do not justify the extension of strict liability to medical service providers.

*Porter v. Rosenberg,* 650 So.2d 79 (Fla.Ct.App. 4th Dist.), *rev. denied,* 661 So.2d 825 (Fla.1995) addressed the situation where the medical product was a breast implant. The Florida court affirmed the dismissal of plaintiff's strict liability claim

against a physician for an allegedly defective breast implant. The court found that strict liability was not applicable to an action against a physician who supplies a product to a patient where the medical services could not have been rendered without using the product and where the predominant purpose of the transaction was the provision of medical services. *Porter* stated:

> Physicians, like hospitals, are providers of medical services. The physician's expertise lies in the diagnosis, treatment and cure of illness, not in the research or development of prosthetics or devices used to aid medical diagnosis or treatment. A physician is not in the business of selling products, but rather is in the profession of providing medical services. Products such as the prosthetic device in this case are supplied and utilized only as needed to deliver the professional medical service. They are incidental, or integral, to a physician's service, but they are not the focus of the physician's delivery of health care.

*Porter,* 650 So.2d at 81–82 (quoting *Cafazzo v. Central Med. Health Servs. Inc.,* 430 Pa.Super. 480, 635 A.2d 151, 154 (1993)). The court further stated that "even with a product, such as a breast implant, a physician is exercising his or her professional judgment in determining what medical procedure to perform and then in selecting the appropriate product to utilize in connection with the procedure. The provision of the product is integrally related to the professional services and skill offered by the medical care provider." *Id.* at 82.

*Weissman v. Dow Corning Corporation,* 892 F.Supp. 510 (S.D.N.Y.1995) also addressed breast implant procedures. *Weissman,* which involved a claim against a physician, among others, for injuries caused by a silicone breast implant procedure, declared that there is not a difference between "health" care and elective, cosmetic procedures. The fact that the plaintiff was or was not intended to be "healed" by the medical service had little, if any, legal significance. Moreover, the type of medical services provided does not transform what is primarily a service into the sale of a product. *Weissman,* 892 F.Supp. at 517.

A significant number of other jurisdictions have also reached the conclusion that strict liability should not be im-

posed upon health care providers. *See Hoff v. Zimmer, Inc.,* 746 F.Supp. 872 (W.D.Wis.1990) (under Wisconsin law, hospital could not be held strictly liable for patient's injuries suffered as a result of a defective hip prosthesis); *NME Hospitals, Inc. v. Azzariti,* 573 So.2d 173 (Fla.Ct.App.2d Dist. 1991) (hospital that utilizes an allegedly defective product only in the course of its primary function of providing medical services is not subject to an action in strict liability where the professional services could not have been rendered without using the product); *North Miami General Hosp., Inc. v. Goldberg,* 520 So.2d 650 (Fla.Ct.App.3d Dist.1988) (no strict liability claim lies against a hospital where patient sustained burns on her body from electro-surgical grounding pad used during surgery); *Magrine v. Krasnica,* 94 N.J.Super. 228, 227 A.2d 539 (County Ct.1967) (dentist not strictly liable for injuries caused by the breaking, in plaintiff's jaw, of a hypodermic needle used during an injection procedure), *aff'd,* 53 N.J. 259, 250 A.2d 129 (1969); *Parker v. St. Vincent Hospital,* 122 N.M. 39, 919 P.2d 1104 (Ct.App.1996) (rejecting, on the basis of policy grounds, the imposition of strict liability on hospitals for defectively designed medical products); *Probst v. Albert Einstein Medical Center,* 82 A.D.2d 739, 440 N.Y.S.2d 2 (1981) (hospital not strictly liable for defective spinal rod broken after surgical implantation); *Nevauex v. Park Place Hosp., Inc.,* 656 S.W.2d 923 (Tex.Ct.App.1983) (hospital not liable under strict liability because radiation supplied was a service, not a product, and strict liability applies to defective products, not services).

There is very little authority to support finding health care providers strictly liable under products liability law. In *Bell v. Poplar Bluff Physicians Group, Inc.,* 879 S.W.2d 618 (Mo. Ct.App.1994), the Missouri Court of Appeals declared that the sale of a product is not required to bring an action for strict liability. Liability is imposed on those placing a product in the stream of commerce, and the product need not be sold if it has been placed in the stream of commerce by other means. Thus, it was held that a hospital could be held strictly liable under products liability law for a defective temporomandibular implant.[5]

---

5. There has been temporomandibular joint ("TMJ") implant litigation across the country, much like breast implant litigation. Contrary to

Plaintiffs point to four other cases in support of their position. These cases, however, are either unpersuasive or no longer good law. The plaintiffs cite *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970), which held that a hospital supplying contaminated blood was strictly liable because it engaged in the business of selling blood for transfusion into patients. This decision has been superseded by statute. *See Advincula v. United Blood Services*, 274 Ill.App.3d 573, 211 Ill.Dec. 182, 654 N.E.2d 644 (1995). Further, reference is made to *Porter v. Rosenberg*, 650 So.2d 79 (Fla.Ct.App. 4th Dist.1995). Although this case contains some language favoring Plaintiffs, it clearly reached, as discussed earlier, the opposite conclusion, namely, that a physician may not be held strictly liable for a defective breast implant. Also, *Branch v. Willis–Knighton Medical Center*, 636 So.2d 211 (La.1994), which allowed to go forward an action for strict products liability for contaminated blood, was principally concerned with procedural issues, such as the statute of limitation, and did not clearly address the merits. Finally, Plaintiffs cite *Karibjanian v. Thomas Jefferson University Hospital*, 717 F.Supp. 1081 (E.D.Pa.1989). Applying Pennsylvania law, the federal district court held that a hospital could be held strictly liable under Restatement § 402A for the use of contrast media (chemical injection). However, in light of the Pennsylvania Supreme Court's rejection of strict liability claims in *Cafazzo*, 542 Pa. 526, 668 A.2d 521 (1995), *Karibjanian* would appear to be essentially overruled.

Thus, we hold that health care providers may not be held strictly liable, under S.C.Code Ann. § 15–73–10, for products used in the course of providing medical treatment.

## B. WARRANTIES

■ Healthcare Defendants argue the lower court erred in finding that health care providers may be held liable under the Uniform Commercial Code's express warranty,[6] implied war-

---

*Bell*, other cases have followed the general proposition that health care providers should not be held strictly liable for TMJ implants.

**6.** *See* S.C.Code Ann. § 36–2–313 (1976):

(1) Express warranties by the seller are created as follows:

ranty of merchantability,[7] and implied warranty of fitness for a particular purpose.[8]

 Article II of the U.C.C. applies only to transactions in goods. Section 36–2–103 (1976) defines "seller" as "a person

(a) Any affirmation of fact or promise, including those on containers or labels, made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

7. *See* S.C.Code Ann. § 36–2–314 (1976):

(1) Unless excluded or modified (§ 36–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require.

(3) Unless excluded or modified (§ 36–2–316) other implied warranties may arise from course of dealing or usage of trade.

8. *See* S.C.Code Ann. § 36–2–315 (1976):

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section (§ 36–2–316) an implied warranty that the goods shall be fit for such purpose.

who sells or contracts to sell goods." "The Code warranty provisions do not govern contracts which are purely for services." 1 James J. White & Robert S. Summers, Uniform Commercial Code 479 (4th ed. 1995). The South Carolina Court of Appeals has recognized that in this state, a sale must occur before an implied warranty can arise. *Priest v. Brown*, 302 S.C. 405, 396 S.E.2d 638 (Ct.App.1990). Further, it has been observed that the U.C.C.'s implied warranty appears "inapplicable to services." F. Patrick Hubbard & Robert L. Felix, South Carolina Law of Torts 262 (2d 1997).

Our conclusion above—that health care providers offer services, not products—determines our holding as to the issues of warranty under Article II of the U.C.C. Cases from other jurisdictions have similarly disallowed such claims. *See In re: TMJ Implants Products Liability Litigation*, 872 F.Supp. 1019 (D.Minn.1995) (physician who installed temporomandibular joint implant could not, under North Carolina law, be liable under U.C.C. breach of warranty theories); *Cook v. Downing*, 891 P.2d 611 (Okla.Ct.App.1994) (dentist was not a "merchant," and "dentures" were not "goods" under the U.C.C.); *Pitler v. Michael Reese Hosp.*, 92 Ill.App.3d 739, 47 Ill.Dec. 942, 415 N.E.2d 1255 (1980) (U.C.C. did not apply to radiation treatments).

Finally, Healthcare Defendants argue that the lower court erred in failing to dismiss Plaintiff's common law warranty of soundness and quality claim. We agree. Plaintiff's have not identified any South Carolina authority that has recognized a common law warranty of soundness and quality, within the medical context; nor are we aware of any. Therefore, this cause of action should be dismissed.

### CONCLUSION

Based on the foregoing, we hold that health care providers are not strictly liable under S.C.Code Ann. § 15–73–10 for medical devices or instruments used in the course of treatment of patients. Further, we hold that health care providers may not be found liable under Article II warranties or a common law warranty of soundness and quality. Accordingly,

the order of the circuit court is **REVERSED** as to these matters.

MOORE, WALLER and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.