595 S.E.2d 493

**Shirley Ann MADISON, Appellant,**

v.

**AMERICAN HOME PRODUCTS CORPORATION
and Aiken Drug Co., Defendants,**

**Of Whom Aiken Drug Co. is Respondent.**

No. 25811.

Supreme Court of South Carolina.

Heard March 17, 2004.

Decided April 19, 2004.

Charles L. Henshaw, Jr., of Furr, Henshaw & Ohanesian, of Columbia, for Appellant.

David E. Dukes, Clarence Davis, and John D. Martin, all of Nelson, Mullins, Riley and Scarborough, of Columbia, for Respondent.

Justice WALLER:

This is a strict liability case. The issue on appeal is whether a pharmacy may be held strictly liable for the distribution of a prescription drug which was filled in accordance with a physician's orders. The circuit court granted summary judgment to Respondent, Aiken Drug Company (Aiken). We affirm.

## FACTS

Shirley Madison, a physician, began taking the drug Effexor on September 25, 1998, which was prescribed for chronic depression. She took it as prescribed through September 29, 1998, at which time she assaulted her seven-year-old son and attempted suicide at her home in Aiken County.

Thereafter, she instituted this suit against American Home Products Corporation (AHP), the company which formulated and marketed Effexor, and Aiken, the pharmacy which filled the prescription. She alleged causes of action in negligence (against AHP only), strict liability, and breach of warranty. Aiken filed a Rule 12(b)(6), SCRCP, motion to dismiss, con-

tending Madison had failed to state a claim upon which relief could be granted against it. The trial court agreed and dismissed the strict liability and breach of warranty claims against Aiken.

## ISSUE

Did the circuit court err in granting Aiken's motion to dismiss the strict liability cause of action? [1]

## DISCUSSION

Initially, Madison claims that since the issue is novel, it should not have been decided on a Rule 12(b)(6) motion to dismiss. We disagree.

As a general rule, important questions of novel impression should not be decided on a motion to dismiss. Where, however, the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues, it is proper to decide even novel issues on a motion to dismiss. *Unisys Corp. v. South Carolina Budget and Control Bd. Div. of Gen. Servs.*, 346 S.C. 158, 551 S.E.2d 263 (2001). We find development of the record unnecessary as the present case presents the purely legal issue of whether a pharmacy may be held strictly liable for properly filling a prescription drug in accordance with a physician's orders. *Cf. Unisys Corp., supra* (constitutional challenges to Procurement Code proceeding properly resolved on Rule 12(b)(6) motion where there were no factual issues in need of further development); *In re Breast Implant Product Liability Litigation*, 331 S.C. 540, 554, 503 S.E.2d 445, 451, n. 2 (1998) (certiorari granted to review denial of defendant's motion to dismiss claim of strict liability of physician for use of breast implant devices). Accordingly, we find no error in the trial court's resolution of the issue pursuant to a Rule 12(b)(6) motion. Further, under the facts of this case, we hold the trial court properly dismissed Madison's strict liability claim.

---

1. Madison does not contest dismissal of the breach of warranty action.

South Carolina's strict liability statute, S.C.Code Ann. § 15-73-10 (1976) (the Defective Products Act), provides, in pertinent part:

One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) shall apply although

(a) The seller has exercised all possible care in the preparation and sale of his product, and

(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller.

Madison asserts that since a pharmacy "sells" prescription drugs, and § 15-73-10 does not specifically exempt them as sellers, they are strictly liable for the sale of prescription drugs. We disagree.

In *In re Breast Implant Product Liability Litigation, supra,* we addressed the liability of health care providers for the use of medical devices, such as breast implants. We found the determinative issue in the case was whether a health care provider, such as a hospital or a doctor, is a "seller" within the meaning of § 15-73-10. We rejected the plaintiffs' claim that, because § 15-73-10 did not specifically exempt "health care providers," they were strictly liable as "sellers." After recognizing that § 15-73-10 applies only to products and not to services, we found health care providers who perform breast implant procedures, offer services rather than products stating:

Although the breast implant procedure requires the use of a product, the implant, the health care provider is fundamentally and predominantly offering a service. The provider must have medical knowledge and skill to conduct the procedure. He must advise the patient of the medical consequences and must recommend to the patient the preferable type of procedure. The product may not be pur-

chased independently of the service. One does not "buy" a breast implant procedure in the same way as one would buy a product, such as a lawnmower. At its heart, the breast implant procedure is a service and not a product.

331 S.C. at 547, 503 S.E.2d at 448–449. The *In re Breast Plant Litigation* Court went on to survey a number of jurisdictions which hold health care professionals and institutions are providers of services, rather than sellers of products, for purposes of strict liability, because the provision of medical services is qualitatively different from the sale of products. We find this analysis applies with equal force to services of a pharmacist in properly filling a prescription in accordance with a physician's instructions.

Other jurisdictions have reached similar conclusions. In *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal.3d 672, 221 Cal.Rptr. 447, 710 P.2d 247 (1985), the California Supreme Court affirmed the grant of judgment on the pleadings to a pharmacy which had sold the drug DES to the plaintiff's mother; the court held a pharmacy may not be held strictly liable for dispensing a prescription drug. The court addressed only the duties of a pharmacist as they relate to filling prescription drugs on the order of a physician, and only when the pharmacist has used due care in compounding and labeling the drug. The court engaged in a lengthy discussion of the distinctions and similarities between pharmacists and ordinary retailers, noting that "[a] key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor." 221 Cal.Rptr. 447, 710 P.2d at 251. While noting that a "sale" does, in fact, occur in the case of prescription drugs, the court nonetheless concluded pharmacies are immune from strict liability, stating:

If pharmacies were held strictly liable for the drugs they dispense, some of them, to avoid liability, might restrict availability by refusing to dispense drugs which pose even a potentially remote risk of harm, although such medications may be essential to the health or even the survival of patients. Furthermore, in order to assure that a pharmacy receives the maximum protection in the event of suit for defects in a drug, the pharmacist may select the more

expensive product made by an established manufacturer when he has a choice of several brands of the same drug. *Id.* at 253. We find the present case analogous to *Murphy.*[2]

Here S.C.Code Ann. § 40–43–10 (the South Carolina Pharmacy Practice Act), specifically states that "[t]he practice of pharmacy shall center around the provision of pharmacy care **services** and assisting the patient to achieve optimal therapeutic outcomes." Similarly, S.C.Code Ann. § 40–43–30(23) defines "health care provider" to include a pharmacist who provides health care services within the pharmacist's scope of practice pursuant to state law and regulation." Given our holding in *In re Breast Implant Product Liability Litigation* that "health care providers" are engaged in a service, we find the same analysis applies here to relieve pharmacists of strict liability.

Consistent with this approach, most courts addressing the issue have declined to extend strict liability to pharmacies. As the Utah Supreme Court recently stated:

[S]trict liability for manufacturers exists in large part as a deterrent and a method of allocating the risk of loss among those best equipped to deal with it. Compounding pharmacies provide a unique and valuable service in our health care system, one which we have no reason to deter at this point. Nor do we believe that pharmacies are in a good position to insure against, or take steps to reduce the risk of, harm done by the drugs used in their compounded products through additional warnings. So long as the pharmacy is acting within the rules and regulations set forth by the state and federal governments for the practice of pharmacy, providing compounded drug products to patients after receipt of a physician's prescription, and confining themselves to the traditional scope of pharmaceutical care, we need not shift the pharmacy into the category of drug manufacturer for the purpose of strict products liability.

---

**2.** The *Murphy* court was persuaded by the fact that the California Legislature had provided pharmacies are a "dynamic patient oriented health **service.**" 221 Cal.Rptr. 447, 710 P.2d at 252. (emphasis supplied).

*Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 79 P.3d 922, 932 (Utah 2003). *See also In re New York County Diet Drug Litig.*, 262 A.D.2d 132, 133, 691 N.Y.S.2d 501, 502 (1st Dept. 1999) (where no allegation pharmacist failed to fill prescriptions precisely as directed, no basis to hold pharmacists liable under theories of negligence, breach of warranty or strict liability); *Kohl v. Am. Home Prods. Corp.*, 78 F.Supp.2d 885 (W.D.Ark.1999) (holding pharmacists immune from strict liability).

In addition to the theory that filling a prescription is more of a service than a sale, courts have found no basis to impose strict liability on pharmacists because "negligence theories provide adequate consumer protection; strict liability is inconsistent with the learned intermediary doctrine, which places the duty to warn on the prescribing physicians, and not pharmacists; the imposition of such duties would force pharmacists to refuse to stock necessary drugs because of risks involved, refuse to use less expensive generic drugs, or second guess the judgment of prescribing physicians; and that permitting strict liability would run counter to a specific exception [comment k] in the commentary to the restatement provision [Restatement (Second) of Torts, § 402(A)]." [3] David J. Marchitelli, *Liability of Pharmacist Who Accurately Fills Prescription for Harm Resulting to User*, 44 A.L.R. 5th 393, 419, § 2(a)(1996).

---

3. Pursuant to comment *k* of § 402(A) of the Restatement (Second) of Torts, a seller of an "unavoidably unsafe" product is not held strictly liable. Comment *k* states, in part, "a product which is incapable of being made safe for its intended and ordinary use, is not considered either defective or unreasonably dangerous, if the product is properly prepared, and accompanied by proper directions and warning." Comment *k* specifically states, "It is ... true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, ... but such experience as there is justifies the use and marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products ... is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product ..." Here, in light of our holding that a pharmacist is not strictly liable for properly filling a prescription drug in accordance with a physician's orders, we need not determine whether Effexor would be considered an "unavoidably unsafe" product, so as to relieve all sellers of strict liability.

456

## CONCLUSION

We hold that because the pharmacy is providing a service, rather than selling a product, it may not be held strictly liable for properly filling a prescription in accordance with a physician's orders. Accordingly, the circuit court's grant of summary judgment to Aiken is affirmed.

**AFFIRMED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.